# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

NASHWAN AL-RAMER ABDULRAZZAQ,
    aka Abdul Hadi al Iraqi, ISN 10026
    Detainee, U.S. Naval Station, Guantanamo
    Bay,

                    Petitioner,

    v.

DONALD J. TRUMP, President,
JAMES N. MATTIS, Secretary of Defense,
HARVEY RISHIKOF, Convening Authority For
    Military Commissions,
CAPTAIN DAVID CULPEPPER, Base
    Commander, U.S. Naval Station,
    Guantanamo Bay
REAR ADMIRAL EDWARD, B. CASHMAN,
    Commander Joint Detention Force, U.S.
    Naval Station, Guantanamo Bay,

                    Respondents.

Case: 1:17−cv−01928
Assigned To : Sullivan, Emmet G.
Assign. Date : 9/21/2017
Description: Habeas Corpus/2255

Civil Action No.

Related Case:
Civil Action No. 09-1462 (EGS)

## PETITION FOR WRIT OF HABEAS CORPUS

## PRELIMINARY STATEMENT

This Petition challenges a years'-long course of unconstitutional conditions of confinement of Petitioner by the United States through deliberate and callous withholding of medical care essential for Petitioner's life, health and ability to defend himself against criminal charges pending before the Military Commission at U.S. Naval Station, Guantanamo Bay ("Guantanamo"). Beginning nearly ten years ago while in U.S. custody Petitioner began to experience consistent and increasingly debilitating degenerative disease affecting his spine and nervous system. Over time, Petitioner has had increasing pain in his extremities and decreasing ability to sit and walk. His condition has increasingly limited his ability to participate in his own defense, and at present makes that impossible. As explained below, his degenerative condition has been exacerbated by the sometimes violent treatment he has experienced at the hands of prison guards.

The United States has been deliberately indifferent to Petitioner's urgent medical needs and requests for care, and has consistently failed to provide him with medical care consistent with applicable minimum treatment standards. The United States has also refused Petitioner's requests for current medical records so that he and his counsel could accurately evaluate his medical state and needs.

In the latter part of August 2017, Petitioner experienced a life-threatening cascade of worsening symptoms, including loss of control of bodily functions and extremities and great pain. On September 1, supported by written submissions from civilian medical doctors, Petitioner urgently sought effective appointment of a qualified independent medical expert to evaluate Petitioner and recommend appropriate medical interventions from Respondent Rishikof, from whom there was no timely response. A few days later, in a sudden, implicit acknowledgement of the calamity it had imposed on Petitioner, the United States flew medical

McKool 1333840v6

personnel to Guantanamo in the face of the approaching Hurricane Irma to perform emergency surgery on Petitioner on September 5th.  No notice of this or other communication about the surgery was provided to his counsel or to the doctors who had urged the United States to act.

From the Petitioner himself counsel learned that the surgery was unsuccessful in arresting his neurological issues, loss of bodily function, and pain.  Though he was initially told any further surgery would have to wait for some months while he recuperated, a second surgery was decreed within days and was to occur on September 18, 19 or 20.  On September 18, counsel finally received Respondent Rishikof's response to Petitioner's September 1 urgent request for the aid of an independent medical consultant: he denied the request, noting Petitioner was scheduled for more surgery during the coming week.  Counsel have had no meaningful information about the second surgery other than that, as of the night of September 18, the surgery had not yet occurred.  Counsel does not know Petitioner's current medical state.

The United States has woodenly refused to provide Petitioner's current medical records so that his medical condition can be independently evaluated by medical professionals not tainted with a history of deliberate and callous indifference to Petitioner's health and safety. Counsel have been informed that Petitioner's medical condition will make him unavailable to meet with counsel for 4 to 6 weeks, during which he will be at risk of whatever medical care the United States chooses to give or withhold, without information or assistance to guide his decisions, including whether to give informed consent.

Settled constitutional principles establish that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment.  The deliberate indifference and disregard of the United States towards Petitioner's health and safety have put him at immediate risk or permanent paralysis or worse, immediately threaten his ability to participate in his own

defense, and constitute cruel and unusual punishment in violation of the Eighth Amendment. The deplorable course of prior action of the United States towards Petitioner renders United States personnel untrustworthy and unfit to unilaterally determine his medical care and fate, and require the Court's intervention to secure appropriate medical care for Petitioner.  To that end, Petitioner seeks relief by means of orders of this Court for the disclosure of medical records and information to Petitioner and his counsel, for the appointment of an independent medical expert or experts who can determine the care that Petitioner now needs to remedy past unlawful treatment and to prevent further injury, and for such other relief required to remedy Petitioner's unconstitutional conditions of confinement.

## I     JURISDICTION

1.     The Court has jurisdiction over this petition pursuant to the United States Constitution, Article I  § 9 (Suspension Clause), 28 U.S.C.  § 1331 (federal question) and 28 U.S.C. § 2241(a) (Writs of Habeas Corpus).

## II     VENUE

2.     Venue is proper in this judicial district under 28 U.S.C.  § 1391 (e) because: respondents are officers or employees of the United States; and a substantial part of the events or omissions giving rise to the Petition occurred in this judicial district.

## III     PARTIES

3.     Petitioner is a male citizen of Iraq currently detained at a prison facility at Guantanamo.

4.     Respondent Trump is the President and Commander-in-Chief of the military forces detaining Petitioner.  He is sued in his official capacity.

McKool 1333840v6

5.      Respondent Mattis is the Secretary of Defense and supervises all United States military forces, including those detaining Petitioner.  He is sued in his official capacity.

6.      Respondent Harvey Rishikof is a civilian who has been designated by Respondent Mattis as the Convening Authority for Military Commissions pursuant to chapter 47A of title 10, U.S.C., section 948h and is sued in his official capacity.  The Convening Authority is responsible for the overall management of the military commissions process, including logistics and personnel support.   The Convening Authority has authority and is responsible to provide resources to Commission defendants necessary and appropriate to enable them to participate in and to present a meaningful defense to charges brought against them.

7.      Respondent Culpepper is the Commander of Guantanamo Bay Naval Station.  As such he is responsible for the safety and treatment of all persons resident within that facility.  He is sued in his official capacity.

8.      Respondent Cashman is the Commander of Joint Task Force -- Guantanamo.  As such he functions as the warden of the prison in which Petitioner is detained.  He exercises direct and immediate control over the conditions of his confinement, including the provision or withholding of necessary medical care.  He is sued in his official capacity.

## IV      STATEMENT OF FACTS

9.      Petitioner has been in U.S. custody since 2006.  He was initially kept in one or more "black sites."  He has been detained at Guantanamo by Respondents, or their predecessors in office, since April 2007.

10.     Petitioner was detained without charge for more than 5 years.  On August 3, 2009, counsel for Petitioner filed a prior Petition for a Writ of Habeas Corpus, challenging the legality of Petitioner's detention without trial or due process, including a meaningful opportunity to be

heard to contest the legality of his detention.   In presenting that Petition, Petitioner was represented by attorneys from the Indiana Federal Community Defenders, a federally funded public defender agency.  A copy of this Petition is attached as Exhibit A.

11.   On June 7, 2013, criminal charges were first sworn against Petitioner before the Military Commission that hears and decides criminal charges against Guantanamo detainees. Additional charges were sworn against him on August 28, 2013.  Petitioner was initially charged, and at all subsequent times been prosecuted, under the name "Abd al Hadi al-Iraqi," which is not his actual name.   He is identified on his Iraqi citizenship card as Nashwan al-Ramer Abdulrazzaq.   His family name—the name he generally uses with friends and family—is Nashwan al-Tamir, which references a family history in trading commodities.

12.   Contemporaneously, federal budget sequestration effectively cut off funding for further participation by federal public defender attorneys on behalf of Petitioner.

13.   On December 17, 2013, at the request of Petitioner's then-counsel, this Court entered a Stipulation and Order dismissing the original Petition without prejudice, and this Court retained jurisdiction to enforce the terms of the Stipulation and Order.  A copy of the Stipulation and Order is attached as Exhibit B.

14.   On February 3, 2014, additional charges were sworn against Petitioner.

15.   On June 2, 2014, the Convening Authority referred the February 3, 2014 charges for trial by military commission and dismissed the June 7, 2013 and August 28, 2013 charges.

16.   Petitioner is currently awaiting trial on the referred charges.

17.   Petitioner is detained under conditions of severe security.  Whenever meetings with defense counsel are held or his attendance at Commission proceedings is required, he is

McKool 1333840v6

shackled by prison guards, hands and feet, and transferred to meeting locations by military vehicle.

18.     As documented in his medical records, Petitioner has sought treatment for chronic and worsening back pain for many years.  In 2008, a computerized tomography scan ("CT scan") showed degenerative disc disease between the L4 and L5 vertebrae.  *See* Exhibit C at HADI-1-027794, HADI-1-027789.  Petitioner's recurring back pain was, at that point, deemed chronic.  A May 2008 examination revealed that "Detainee seemed unsteady while standing."  *Id.* at HADI-1-027780.  By June of 2008, Petitioner's back pain had increased to include pain that radiated down his right leg. *Id.* at HADI-1-027781.  By August 2008, doctors noted: "Detainee expressed concerns about current back pain and length of time" it has taken to resolve the issue.  *Id.*

19.     Petitioner continued to seek treatment through 2008 and into 2009.  In August 2009, he reported flare-ups and pain that affected the left side of his body, to include pain radiating from his back to his left leg.  *See* Exhibit C at HADI-1-027819.  Medical providers performed various diagnostic tests but failed to cure the ailment or the pain.  X-rays and CT scans continued to show degenerative disc disease.

20.     In early 2010, a bulging mass was identified on the left side of Petitioner's spine.  Doctors performed a biopsy on the soft tissue mass.  Pathology reports were negative.  *See* Exhibit C at HADI-1-027892.  The mass remains today.

21.     Throughout 2010, Petitioner continued to be seen for chronic back pain.  In June 2010, he again reported pain that ran down left side of his leg.  Throughout 2010, he received physical therapy, traction table therapy, and regular treatments with a Transcutaneous Electrical Nerve Stimulator unit.  These therapies and treatments were ineffective.

22.     In September 2010, Petitioner's medical records reflect he was diagnosed with spinal stenosis.  Spinal stenosis is an abnormal narrowing of the spinal canal.  The narrowing of the spine causes a restriction to the spinal canal which, aside from pain, can result in neurological deficits such numbness and loss of motor control.  It was at this point, *seven years ago*, that a doctor first proposed the possibility of surgery, though none was performed.

23.     In November 2011, Petitioner was again diagnosed with lumbar spine disc herniation and spinal stenosis.  During this timeframe, Petitioner reported pain radiating to his right buttock.  *See* Exhibit C at HADI-1-027738.

24.     Throughout the remainder of 2011 and 2012, Petitioner was seen for chronic low back pain.  In January 2012, Petitioner again reported low back pain radiating to his left thigh. *See* Exhibit C at HADI-1-027894.  In September 2012, he again reported sharp pain radiating from his back toward his left knee.  At this point doctors ordered further testing, but it is not clear from the medical records whether that testing was performed.

25.     Petitioner's back pain persisted and his health gradually declined throughout 2012. In November 2012, he continued to report radiating pain from his low back down through his thighs, but, for the first time, reported feeling "pins and needles sensations" in his toes.  *See* Exhibit C at HADI-1-027675.

26.     Petitioner's condition continued to degrade and he continued to suffer from back pain between 2013 and 2017.

27.     On January 9, 2017, Petitioner was required by the Commission to be physically present at a hearing.  The prison guard contingent that came to shackle him included female guards.  Petitioner's religious convictions forbid him from physical contact with females who are not family members and so he objected to and resisted contact with the female guards.  Petitioner

McKool 1333840v6

was then subjected to a "forcible cell extraction (FCE)", in which no accommodation was made for his long-standing spinal and nerve disease, well-known to Guantanamo personnel, and he was violently restrained, involuntarily shackled and physically moved against his will by guards including female guards. There was no legitimate reason for requiring his physical presence at a hearing that day. This was an excruciating as well as humiliating assault, after which his lower back pain symptoms noticeably increased.

28.     A January 23, 2017 lumbar CT scan of Petitioner's spine showed anterior wedging of T12 and L1 and anterolosthesis on L4 and L5, which had increased since the previous CT scan. Additionally, there were degenerative changes to L4-S1. It was at this time, many years into Petitioner's history of accelerating symptoms, that an MRI was first proposed. *See* Exhibit C at HADI-1-036783-036784. Petitioner has been advised, and Respondent Mattis has been informed directly by independent medical experts that the January 2017 CT scan showed evidence of severe neural encroachment that, if left untreated, could cause severe and permanent neurological impairment. Guantanamo personnel left this condition untreated for approximately 9 months, by which time severe and permanent neurological impairment had either occurred or was imminent.

29.     In August 2017, he began to experience an increase in the loss of sensation in both feet. The week of August 7, 2017, during attorney-client meetings in preparation for the August pretrial hearings and the direct examination of a key cooperating government witness, Petitioner began to feel tingling throughout his body. He began experiencing an increased loss of sensation in both hands and both legs, as well as an increase in his muscle weakness. During this period, Petitioner described to his defense counsel that his feet felt heavy and weighed down. He also described an increase in the level, sharpness, and frequency of his pain.

30.     At an attorney-client meeting on August 9, 2017, defense counsel noticed Petitioner open and close his left hand repeatedly during the six-hour meeting.  Petitioner explained that his hand was numb and he was opening and closing it in an attempt to force feeling back into it.  By that evening, Petitioner's legs had become so weak that he could not stand up straight or walk.

31.     On August 10, 2017, a doctor examined Petitioner at his detention location.  The doctor determined that Petitioner's deteriorating condition required transportation to the hospital for additional tests.  Some tests were conducted, but, apparently, a prescribed CT scan could not be performed because the hospital staff failed to properly inject intravenous contrast dye for the scan.  Following this hospital visit, Petitioner was declared medically unfit for attorney-client meetings.

32.     By that point, Petitioner had to use a wheelchair when moving within his detention facility.  On at least one occasion, he had been denied the use of a wheelchair without explanation.  He did not feel well enough to attend attorney-client meetings, which occur at a facility he must reach by transport van.  Transportation to that facility is painful, and the facility is not wheelchair accessible.

33.     Although his condition did not improve, Respondent Cashman's staff "cleared" Petitioner to attend Commission pre-trial hearings on August 14-17.  Due to his constant discomfort and concern over bladder control, he attended only one day of the session.

34.     Unable to obtain any meaningful information or assurances from Respondents about medical intervention to relieve Petitioners' medical distress, on September 1, 2017, defense counsel addressed a memorandum to Respondent Rishikof, the Convening Authority of the Military Commission, entitled "Emergency Request for Expert Assistance - Neurological

Surgery." This memorandum is attached as Exhibit D and details much of the history recounted above of the United States' callous indifference to Petitioner's painful and deteriorating physical condition. The memorandum described the inability of Petitioner to obtain urgently needed medical care, the inability of Petitioner or his counsel to obtain current medical records concerning his status or care, and requested the intervention of the Convening Authority to appoint an independent medical specialist able to diagnose Petitioner's condition and recommend treatment.

35.     Defense counsel's memorandum to the Convening Authority was supported by an August 31, 2017, letter sent to Guantanamo authorities by medical doctors affiliated with Physicians for Human Rights who, informed of Petitioner's circumstances, believed that his circumstances were dire, and required immediate emergency medical care. A copy of this letter is attached as Exhibit E.

36.     Defense counsel had no timely response from Respondent Rishikof or any other Respondent or subordinate or agent and so remained in the dark about Petitioner's status.

37.     From a Miami Herald news article, however, defense counsel learned that someone in the Military Commission process did become concerned that JTF-Guantanamo had put Petitioner's health at unreasonable risk through lack of medical care because, notwithstanding the approaching Hurricane Irma, a surgical team was suddenly flown to Guantanamo to perform emergency back surgery on Petitioner on September 5. The September 7, 2017 Miami Herald account is attached at Exhibit F.

38.     Defense counsel's renewed requests for current medical records and information have been ignored. Despite multiple requests for information and records, the United States has failed to provide complete medical discovery. On August 25, 2017, the counsel received a

-10-

smattering of random medical records from 2007, 2013, 2014, 2016 and 2017. To date, the United States has not produced a comprehensive set of Petitioner's medical records. His counsel has not received any medical records from 2015, very few records from 2016, and only one CT scan exam result from January 2017 that was not produced until August 25, 2017.

39.    The most recent medical records that have been produced are from March 2017. Many of these, however - including key records describing Petitioner's symptoms immediately prior to the January 2017 CT scan - have been marked as classified. There is no basis for classification of these records, and in fact they are in facial violation of Executive Order 15326 and other classification authorities, because they lack the required paragraph markings. Most important, because they are classified, Petitioner's counsel cannot show these records to their medical experts, who do not have security clearances.

40.    Petitioner's counsel filed an emergency motion to compel production of medical records in the military commission proceeding on September 8, 2017. Because of the urgency of the situation, the motion requested that the military judge set an expedited briefing schedule followed by an order for immediate production. To date, the Government has not responded to the motion or provided additional medical records and the military judge has not set an expedited briefing schedule.

41.    On September 8, 2017, the doctors consulted by Defense counsel who had written to Guantanamo authorities on August 31st addressed a letter to Respondent Mattis, U.S. Secretary of Defense, recounting Petitioner's circumstances and recent surgery, expressing substantial concern that his treatment had not met applicable standards of care, that deviations from the standards of care could result in permanent impairment and that, absent proper

disclosure of medical records and information, Petitioner's informed consent to further treatment could not be obtained.  *See* Exhibit G.

42.      To our knowledge, no response has ever been received by any of these medical doctors to any of their communications.

43.      After the first surgery, Petitioner remained in pain and largely immobilized.  His symptoms became progressively worse.  Despite his condition, he is always shackled to his bed by hand and foot and cannot perform minimal functions of daily living without medical assistance.

44.      Counsel initially was informed indirectly that any further surgery would most likely occur some weeks or months in the future, to allow Petitioner some time to recuperate from the significant surgery he had just had.  By September 12th, Petitioner's condition had worsened to the point that a decision was made to fly surgeons back and operate again, this time on his neck.

45.      On September 14th, the Legal Advisor to Respondent Rishikof notified the Deputy Chief Counsel of the Military Commission Defense Organization (the umbrella agency responsible for the defense of Military Commission defendants by detailed military personnel) that Petitioner would be having a second surgery on his neck on September 19th or 20th.  The Legal Advisor also stated that Petitioner would not be permitted to meet with his counsel for four to six weeks following this second operation.

46.      On September 15, 2017, a Government lawyer on the military commissions prosecution team informed defense counsel that the surgery had been moved up again, to Monday, September 18, 2017.

47.     Consistent with prior practice, the United States has provided counsel with no meaningful information about Petitioner's medical state or the second surgery.  Petitioner was told that the second surgery would require equipment not available at Guantanamo and the participation of another kind of doctor not involved in the first surgery - a "bone specialist".

48.     Petitioner's counsel have repeatedly emailed Guantanamo authorities asking for information about his medical condition, to no avail.  When counsel was finally told they were "welcome to submit a special request form . . . to request arrangement of an expedited phone call with your client", this request was submitted and it was then denied.  Requests for meetings with Petitioner have also been denied.

49.     On September 18th, Petitioner's counsel reiterated their need for disclosure of medical records in a written submission to the military judge, so that Petitioner's medical condition and fitness to participate in his defense can be evaluated by competent experts other than those responsible for his desperate current condition and those invested in his conviction and continued incarceration.  *See* Exhibit H, "AE 099D-Defense Notice of Mr. al-Tamir's Current Medical Status Regarding AE 099 Emergency Motion to Abate the Proceedings Until Mr. al-Tamir is Physically Competent to Stand Trial."  No action has been taken on this request as of the date of this Petition.

50.     On September 18, 2017, Petitioner's counsel received a response from Respondent Rishikof, the Convening Authority, denying counsel's September 1st request for the appointment of a medical expert to assist in determining his condition and fitness for trial. A copy of this response is attached as Exhibit I.

51.     On September 19, 2017, Petitioner's counsel was informed by a member of the prosecution that no surgery had occurred on the previous day.  That person did not know if any was planned for that day.

52.     Petitioner's condition is medically precarious and disables him from effective participation in his defense, which next involves a scheduled Commission hearing on October 2nd.  The United States' response to the effect of Petitioner's condition on further proceedings is that they will go forward regardless until and unless stopped by the military judge.  See "Alleged al-Qaida commander needs more spine surgery; next Guantanamo hearing in doubt," Miami Herald, September 15, 2017 (attached as Exhibit J).

53.     The medical record and unnecessary downward trajectory of Petitioner's deteriorated and disabling condition evidence that Petitioner's treatment at the hands of Respondents has fallen well below applicable standards of competent medical care and that Respondents collectively have been deliberately indifferent to clear and consistent facts, over many years, that demonstrated the need for medical intervention to prevent catastrophic injury to Petitioner.

54.     Access to full medical records and their evaluation by a competent neutral medical expert is minimally required in order to determine: the extent to which Petitioner's medical disability is the result of Respondents' deliberate indifference and inaction; if and when Petitioner may able to participate in his own defense; and the proper course of future treatment.

**V     CLAIM FOR RELIEF**

55.     Relief by Writ of Habeas Corpus is appropriate to remedy unconstitutional conditions of confinement of a prisoner held by the United States, including Guantanamo detainees.  *Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014).

-14-

56.     The Eighth Amendment to the United States Constitution bars the infliction of "cruel and unusual punishments."  This prohibition encompasses the "wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

57.     "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs … or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)(citation and footnotes omitted).

58.     "[P]rison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)(citations omitted).

59.     The deprivation of medical care to Petitioner necessary to prevent catastrophic health deterioration involving paralysis, pain and loss of control of bodily functions constitutes the deprivation of basic human needs and the unnecessary infliction of punishment and pain, both physical and mental.

60.     Over a period of years, Respondents were collectively and repeatedly informed of the extreme circumstances of Petitioner's health deterioration and the need for medical intervention to correct it and forestall further injury.  Respondents acted with deliberate and calculated indifference to a known unreasonable risk to Petitioner's health and to his ability to participate in his own defense.

61.     Respondents' course of action over the course of many years indicates that they cannot be trusted to determine fairly and in a timely way what medical treatment Petitioner needs

McKool 1333840v6

and when he should receive it, nor whether his physical condition prevents him from participating in his own defense.

62.    The intervention of this Court is required in order to remedy past constitutional violations and to prevent further violations in the future.

## VI    RELIEF REQUESTED

For the foregoing reasons, Petitioner respectfully asks the Court to order that Respondents:

(i)    begin immediately to treat Petitioner in accordance with applicable standards of medical care as determined by a court-appointed medical expert;

(ii)    turn over immediately to the Court, Petitioner and his counsel complete copies of all medical records pertaining to Petitioner from the beginning of his detention by the United States to the present;

(iii)    provide copies of all future medical records pertaining to Petitioner contemporaneously to Petitioner and his counsel;

(iv)    turn over to defense counsel copies of all internal military or Department of Defense correspondence and memoranda pertaining to Petitioner's medical care;

(v)    provide the Court and defense counsel with a proposed course of medical treatment of Petitioner;

(vi)    appoint and fund the reasonable compensation and expenses of qualified medical doctors independent of the United States government in the specialties of orthopedic and/or spinal neurosurgery and pain management, which are applicable to Petitioner's current medical disabilities, and provide them such access as they deem necessary to enable them to promptly conduct such medical examinations, including but not limited to in-person medical examination(s) of Petitioner, and record reviews as they deem appropriate to prepare a report to the Court and the parties on (a) the adequacy of Petitioner's past treatment and (b) their recommendations as to a future course of treatment; and

(vii)    For such other and further relief as the evidence before the Court may warrant.

Dated:  September 21, 2017.

Respectfully submitted,

_Tiffany Heavlin_

Brent N. Rushforth [Bar No. 331074]
brushforth@mckoolsmith.com
Tiffany Heavlin [Bar No. 1020997]
theavlin@mckoolsmith.com
McKool Smith
1999 K Street, NW
Washington, D.C. 20006
Telephone: (202) 370-8300
Telecopier: (202) 370-8344

Robert L. Palmer [Bar No. 151399]
palmer@mckoolsmithhennigan.com
McKool Smith Hennigan, P.C.
300 South Grand Avenue Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1200
Telecopier: (213) 694-1234

Adam Thurschwell
Adam.Thurschwell@osd.mil
Military Commissions Defense Organization
1620 Defense Pentagon
Washington, D.C. 20301-1600
Telephone: (571) 256-9694

**ATTORNEYS FOR PETITIONER**