# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FILED WITH THE
COURT SECURITY OFFICER

CSO:
DATE: 7/24/07

NASHWAN AL-RAMER ABDULRAZZAQ,
aka, Abdul Hadi al Iraqi, ISN 0010026,
Detainee, U.S. Naval Station, Guantanamo Bay

Petitioner,

v.

BARACK H. OBAMA, President,
ROBERT M. GATES, Secretary of Defense,
REAR ADMIRAL TOM COPEMAN,
Commander, Guantanamo JTF,
ARMY COL. BRUCE VARGO, Commander,
Joint Detention Group Guantanamo

Respondents.

Leave to file without
Prepayment of Cost GRANTED

Judge Reggie B. Walton

8/3/07

**FILED**

AUG - 3 2009

Clerk, U.S. District and
Bankruptcy Courts

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Nashwan Al-ramer Abdulrazzaq, aka, Abdul Hadi al

Iraqi a detainee at the United States Naval Station Guantanamo

Bay, Cuba ("Guantanamo") respectfully petitions for a writ of

habeas corpus.

### I. JURISDICTION

1. The jurisdiction of this Court rests on 28 U.S.C. § 1331

(federal question) and US. Const. art. I § 9 (Suspension Clause)

1

## II. VENUE

2. Venue lies in this judicial district under 28 U.S.C. §1391(e) because (1) Respondents are officers or employees of the United States acting in their official capacities or under color of legal authority, (2) one or more Respondents reside in this judicial district, and (3) a substantial part of the events or omissions giving rise to Petitioner's the claim occurred in this judicial district.

## II. PARTIES

3. Petitioner, Nashwan Al-ramer Abdulrazzaq, is a prisoner at Guantanamo.

4. Respondent Barack H. Obama is President of the United States. President Obama is sued in his official capacity.

5. Respondent Robert M. Gates is the Secretary of Defense. He is sued in his official capacity.

6. Respondent Rear Admiral Tom Copeman, is Commander, Joint Task Force-Guantanamo. He is sued in his official capacity.

7. Respondent Army Colonel Bruce Vargo is Commander, Joint Detention Group, Joint Task Force-Guantanamo. He is sued in his official capacity.

-2-

### III.  STATEMENT OF FACTS

8.  Mr. Nashwan Al-ramer Abdulrazzaq has been detained at Guantanamo by the Respondent's, or the predecessors, since at least April 27, 2007.

### IV. CLAIMS FOR RELIEF

### COUNT I
### (SUSPENSION CLAUSE)

9. Mr. Abdulrazzaq enjoys the privilege of habeas corpus guaranteed by the Suspension Clause, U.S. Const. art. I, § 9, cl. 2.

10. The privilege of habeas corpus entitles Mr. Abdulrazzaq to a meaningful opportunity to demonstrate that he is being unlawfully held.

11. Mr. Abdulrazzaq has not been afforded a meaningful opportunity to demonstrate that he is unlawfully being held.

12. Respondents' imprisonment of Mr. Abdulrazzaq therefore violates the Suspension Clause.

## COUNT II
## DUE PROCESS CLAUSE

13. The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. Amend. V.

14. Mr. Abdulrazzaq is entitled to the protection of the Due Process Clause.

15. Respondents have deprived Mr. Abdulrazzaq of liberty without due process of law.

16. Respondents' imprisonment of Mr. Abdulrazzaq therefore violates the Fifth Amendment.

### V.  PRAYER FOR RELIEF

Wherefore, Petitioner prays for relief as follows:

1. An order appointing William E. Marsh and William H. Dazey, Indiana Federal Community Defenders, Inc., as attorneys for Mr. Abdulrazzaq.

2. Entry forthwith of the Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, entered by this Court on September 11,2008 (Misc. No 08-442 (Doc 409)).

-4-

3. Entry of an Order requiring that the government:

(a) produce concurrently a classified and unclassified factual return for Mr. Abdulrazzaq, within 7 days.

(b) produce a declassified factual return for Mr. Abdulrazzaq, within 21 days;

(c) seek from the Court, simultaneously with the filing of the unclassified or declassified return, as the case may be, approval of any proposed treatment of information in the return as "protected information";

(d) provide counsel for Mr. Abdulrazzaq with 30 days advance notice of any intended transfer of Mr. Abdulrazzaq from Guantanamo; and

e) grant such other relief as the Court may deem necessary and appropriate.

Dated:  July 24, 2009

Respectfully Submitted,

/s/ William E. Marsh

William E. Marsh
  Indiana Bar # 9040-49
  Bill.Marsh@FD.org
William H. Dazey
  Indiana Bar # 4433-49
  Bill.Dazey@FD.org
Indiana Federal Community Defenders
Suite 752
111 Monument Circle
Indianapolis, IN. 46204
317 383-3520

CERTIFICATIONS OF REPRESENTATION WITHOUT COMPENSATION

1. Pursuant to L. Cv. R 83.2(g), I hereby certify that I am a member in good standing of the bar of the State of Indiana and I am representing Mr. Abdulrazzaq without compensation.

William E. Marsh
William H. Dazey

Dated: July 24, 2009

-6-

CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| *NASHWAN AL-RAWER ABDULRAZAK* | *Barack H. Obama, et al.* |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TI

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
*William E. Marsh*
*Indiana Fed. Comm. Defenders*
*111 Monument Circle*
*Indianapolis, IN. 302833520*

Case: 1:09-cv-01462
Assigned To : Sullivan, Emmet G.
Assign. Date : 8/3/2009
Description: Habeas Corpus/2255

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
   Plaintiff

☒ 2 U.S. Government
   Defendant

☐ 3 Federal Question
   (U.S. Government Not a Party)

☐ 4 Diversity
   (Indicate Citizenship of Parties
   in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>Social Security:<br>☐ 861 HIA ((1395ff))<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>Other Statutes<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

---

☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

| Real Property | Bankruptcy | Forfeiture/Penalty |  |
|---|---|---|---|
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>Prisoner Petitions<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| Personal Property<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | Property Rights<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>Federal Tax Suits<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | Other Statutes<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act) |

| ⊠ G. *Habeas Corpus/ 2255* | □ H. *Employment Discrimination* | □ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| ⊠ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| □ K. *Labor/ERISA (non-employment)* | □ L. *Other Civil Rights (non-employment)* | □ M. *Contract* | □ N. *Three-Judge Court* |
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

| ⊠ 1 Original Proceeding | □ 2 Removed from State Court | □ 3 Remanded from Appellate Court | □ 4 Reinstated or Reopened | □ 5 Transferred from another district (specify) | □ Multi district Litigation | □ 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 1331 AND U.S. CONST. ART. 1 SEC. 9

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 □ | **DEMAND $** | Check YES only if demanded in complaint<br>**JURY DEMAND:** □ YES   □ NO |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | □ YES   □ NO | If yes, please complete related case form |
|---|---|---|---|

DATE 8/3/9    SIGNATURE OF ATTORNEY OF RECORD    NCO

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C., 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States

III.    CITIZENSHIP OF PRINCIPAL PARTIES. This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

DEC 1 7 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

NASHWAN AL-RAMER ABDULRAZZAQ,

*Petitioner,*

v.                                                     Civil Action No. 09-1462 (EGS)

BARACK H. OBAMA, et al.,

*Respondents.*

### STIPULATION AND ORDER

WHEREAS Nashwan al-Ramer Abdulrazzaq (ISN 10026) ("Petitioner") seeks leave to

dismiss his habeas petition voluntarily without prejudice,[1] while ensuring continued access to

counsel pursuant to the Protective Order entered in this case, as set forth in this Court's

Memorandum Opinion and Order in *In re: Guantanamo Bay Detainee Continued Access to

Counsel*, 2012 WL 4039707, No. 12-MC-00398 (RCL) (D.D.C. Sept. 6, 2012) (Dkt Nos. 31 &

32), as amended (Dkt. No. 33); and

---

[1] Counsel for Petitioner, due to budgetary constraints on travel, has not had an opportunity to
meet with Petitioner to discuss this dismissal.  So long as sequestration budgets remain in effect,
neither Indiana Federal Defenders, Inc. nor Defender Services have funds available to finance
travel and lodging for counsel and an interpreter to travel to Guantanamo.  Counsel's office has
made inquiry of Defender Services and the Federal Defender for the District of Columbia and is
advised that no current source of supplement funding exists.  Military Commission charges have
been sworn against Petitioner.  Counsel for Petitioner has corresponded with and met with Sean
Gleason, detailed initially as military defense counsel on the client's pending commission case.
Counsel has corresponded with Chris Callen, successor military defense counsel detailed to the
client's pending commission case.  Counsel is informed and believes that the Petitioner has been
in regular contact with military counsel and understands that his pending habeas case is "out of
steam" pending resolution of commission charges.  Counsel for Petitioner believes this dismissal
to be in accord with his client's wishes and in his client's best interest because no non-frivolous
argument that Petitioner's continued detention is unlawful pending the resolution of commission
charges presents itself and because Petitioner's claims may be reinstated in the event commission
charges are resolved in Petitioner's favor.  Counsel would propose to travel to Guantanamo and
meet with Petitioner pursuant to the "Protective Order" whenever funding might become
available and to report such meeting to the Court by supplemental filing.

WHEREAS Respondents consent to dismissal of this habeas petition without prejudice, and do not object to Petitioner's continued access to counsel on the terms provided below;

IT IS HEREBY STIPULATED AND ORDERED that:

1.    Petitioner Nashwan al-Ramer Abdulrazzaq's (ISN 10026's) petition for a writ of habeas corpus, and this action, are hereby DISMISSED without prejudice.

2.    The Amended Protective Order for Habeas Cases Involving Top Secret / Sensitive Compartmented Information and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, in Habeas Cases Involving Top Secret / Sensitive Compartmented Information, issued by Judge Hogan on January 9, 2009 in *In re: Guantanamo Bay Detainee Litigation*, No. 08-MC-442 (TFH) (D.D.C.) (Dkt. Nos. 1481and1496), and entered in this case via minute order on August 7, 2009 (the "Protective Order"), shall remain in effect and continue to govern Petitioner's access to counsel while he remains confined at Guantanamo Bay and has the right to seek further relief by habeas corpus, whether or not he actually continues to have a petition pending before the Court.

3.    This Stipulation and Order is without prejudice to the parties' rights to seek to set aside, modify, or otherwise obtain relief from any provision herein or of the Protective Order on any ground that could be or could have been raised at any time.

4.    The Court shall retain jurisdiction to enforce the terms of this Stipulation and Order.

**SEEN AND AGREED TO:**

STUART F. DELERY
Assistant Attorney General

JOSEPH H. HUNT
Director

TERRY M. HENRY
Assistant Branch Director

*/s/ Robert J. Prince*
ANDREW I. WARDEN
ROBERT J. PRINCE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Tel: (202) 305-3654
Fax: (202) 616-8470
robert.prince@usdoj.gov
*Attorneys for Respondents*

**SO ORDERED.**

Date: 12/16/13

NASHWAN AL-RAMER ABDULRAZZAQ
By Counsel

*/s/ William H. Dazey*
WILLIAM H. DAZEY
Indiana Federal Community Defenders
Suite 752
111 Monument Circle
Indianapolis, IN 46204
(317) 383-3520

*Attorneys for Petitioner*

The Honorable Emmet G. Sullivan
United States District Judge

# Exhibit C

UNCLASSIFIED//FOUO

| NSN 7540-00-634-4176 | AUTHORIZED FOR LOCAL REPRODUCTION |
|---|---|
| **MEDICAL RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE** |
| **DATE** | SYMPTOMS, DIAGNOSIS, TREATMENT TREATING ORGANIZATION (Sign each entry) <br> JTF – JMG, Medical Department, Guantanamo Bay, Cuba |

| | |
|---|---|
| **16November2012 0935** | **SMO Progress Note** |
| **Subjective** | Met with detainee in treatment room for 20 minutes to discuss multiple issues. First and most important in lower back pain. Has history of L4-5 DDD noted in 2010. Notes this is a little different. Had been pain free for some time but over past 14 days pain has developed again. No known injury or trauma that occurred within past 14 days. Notes pain comes and goes depending on sleeping position and activity level. Pain is located left side in area of PSI joint. Notes occasional radiation down to posterior thigh but not below the knee. Has occasional pins and needles sensations in left 3rd toe and right 5th toe but intermittent and random in occurrence. Pain increases with sitting, especially when slumping forward, and improves when he sits up straight so he thinks a back support would be beneficial. He notes baseline pain of 2-3/10 with intermittent spikes of 4-5/10 at its worst. Has not yet started affecting his activities but is getting gradually worse. Denies weakness in LE. Denies saddle anesthesias or incontinence. Denies f/c/ns/n/v/d. He does not want medication for this but other treatments. Also, he asked in follow-up about the status of the request to see a prosthedontist for his bridge. Lastly, he notes some dry, red areas on his upper and lower lip that have occurred 4-5 times over the past 5 months. When he scratches them, they can bleed. This is new to him. He denies them ever looking like a blister. |
| **Physical Exam** | Gen – WDWN in NAD, AOx3 <br> HEENT – few small erythematous patches on lips, one on upper right and one on lower left, no vesicles or pustules <br> Back – FF to 60 degrees before pain, extension full with mild pain on extreme extension, pain slightly worse with extension than flexion, + TTP left PSI joint, mild left lumbar paraspinal spasm, fixation of left PSI with forward flexion <br> LE – strength 5/5 throughout, sensation intact to light touch, gait WNL |
| **A/P** | 1. Low Back Pain – likely PSI in origin with SI joint dysfunction based on exam. Discussed with him the medication options of NSAIDs and muscle relaxers which he declines at this time. Demonstrated some stretches that he can work on and advised will get rehab protocol from PT for his low back/SI joint. Will also work to get a back support for him to use to help with this. Will give trial of rehab for 2 weeks and if not better will consider e-stim or iontophoresis for further treatment. He verbalized understanding of all and had no further questions. |
| | 2. Dental bridge – Advised him that Dental and I are still working to get Prosthedontist here to work on his bridge which is past its life expectancy. Do not have solid dates at this time but am hopeful one will come within next 3 months. |
| | 3. Lip sores – Appears on exam to be possible dermatitis vs. HSV1. Offered chap stick as initial treatment for moisturization but he declines stating this has not worked in the past. Will try Zovirax for treatment which will in part be diagnostic as well. |
| | Dr. SR              / TFP SMO <br> Dr. SR |

DETAINEE'S IDENTIFICATION NUMBER:

**10026**

CHRONOLOGICAL RECORD OF MEDICAL CARE <br> MEDICAL RECORD <br> STANDARD FORM 600 (rev. 9/05)

UNCLASSIFIED//FOUO

HADI-1-027675

UNCLASSIFIED//FOUO

NSN 7540-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT TREATING ORGANIZATION (Sign each entry)<br>JTF –JMG, Medical Department, Guantanamo Bay, Cuba |
| 08 NOV 11<br>1615 | S: Patient presents to the treatment room to discuss several issues. First, he questions if his new<br>Reading glasses have come in. He discussed irritation secondary to current soap. Finally, he<br>Discussed ongoing back pain. Patient has known lumbar spine disc herniation and spinal stenosis.<br>He denies numbness or tingling. He denies weakness. He occasionally gets right inner thigh pain.<br>Pain radiates into his right buttock. He continues to exercise frequently. He has used traction in the<br>Past with some success. Last used almost a year ago. Has used celebrex but does not desire at this<br>Time. He would like to try glucosamine again as it helped some in the past.<br><br>ROS otherwise negative.<br><br>O: WD WN male in NAD. Alert and oriented.<br>  Back – Negative SLR. Distal NVI. Motor 5/5. Sensory intact.<br><br>A: (1) Known lumbar disc disease and spinal stenosis. Discussed options for treatment that are<br>  Currently available. Patient would consider using traction again. Will get educated on use of<br>  Traction from NH GTMO PT.. Will get written info on tx of back pain. Declines NSAIDS.<br>  Will start chondroitin TID for three weeks and then decrease to once daily.<br>  (2) Vision – will check with NH GTMO Optometry for status of glasses.<br>  (3) Irritation from soap – will attempt to get cethaphil wash.<br><br>Dr AP |
| 25 NOV 2011<br>13:30 | HM NOTE: DETAINEE SEEN AT BEAN HOLE AND GIVEN 10ML TOLFINATE<br>CREAM INSTEAD OF TOLFINATE POWDER DUE TO NONE IN STOCK — HM 40<br><br>Dr AP |

DETAINEE'S IDENTIFICATION NUMBER:

CHRONOLOGICAL RECORD OF MEDICAL CARE
MEDICAL RECORD
STANDARD FORM 600 (rev. 9/05)

UNCLASSIFIED//FOUO

HADI-1-027738

NSN 7540-00-634-4176                                                    AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT TREATING ORGANIZATION (Sign each entry)<br>JTF – JMG, Medical Department, Guantanamo Bay, Cuba |

| | |
|---|---|
| 4/28/08 | TFP Medical Officer<br>Detainee concern noted; Expected complication of new exercise regimen c/w anticipated outcome per recent Physical Therapy evaluation. Will continue to monitor. |
| 5/1/08 | HM NOTE: DET SEEN FOR MONTHLY WEIGH-IN. CURRENT WEIGHT IS 153.6 lbs, OR 106% IBW.<br>Monthly weight noted; Stable ⊕ Concerns |
| 5/6/08 | HM NOTE: DET SEEN FOR C/O JOINT PAIN. DET STATES SINCE HE HAS BEEN USING SHOE INSERT PAIN IN HIS (R) HIP IS NOW OCCURRING ON THE (L) SIDE. DET WOULD LIKE TO KNOW IF IT MAY BE POSSIBLE TO MAKE THE INSERT THINNER, SO AS TO LESSEN THE DISCOMFORT OF ADJUSTING TO THE INSERT. |
| 13 May 08 | TFP Medical Officer<br>Discussed detainee concern → ↑ hip pain with use of new shoe insert with treating Physical Therapist. Detainee previously advised that condition might result with use of prosthesis. Physical Therapist urges to change current insert to thinner version. Upon my review of detainee's actual insert, device allowed for easy removal of 1mm layers. Insert subsequently adjusted and returned to detainee's possession for continued usage. |
| 21 May 08 | HM NOTE: DETAINEE SEEN IN CELL IN REGARDS TO HIS BACK PAIN. DET SEEMED UNSTEADY WHILE STANDING. DET C/O 7/10 BACK PAIN. HE REFUSED ANY TREATMENT OR MEDS. WILL CONTINUE TO MONITOR FOR CHANGES IN STATUS. |
| 2? May 08 | TFP Medical Officer<br>Detainee seen at bedside regarding exacerbation of above noted chronic complaint. Discussed methods of relief. Detainee offered PO NSAIDs and injection of Toradol which he refused. Advised to resume previously recommended stretching exercises. Will continue to monitor. |

DETAINEE'S IDENTIFICATION NUMBER:

100 74

CHRONOLOGICAL RECORD OF MEDICAL CARE
MEDICAL RECORD
STANDARD FORM 600 (rev. 5/85)

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE | | |
|---|---|---|---|
| DATE | SYMPTOM, DIAGNOSIS, TREATMENT TREATING ORGANIZATION (Sign each entry) JTF-JMG, Medical Department, Guantanamo Bay, Cuba | | |

| DATE | ENTRY |
|---|---|
| 6/1/08 | DET. Seen at Bravohole for c/o Low BACK PAIN AND HEADACHE. DET STATES THAT HIS BACK PAIN IS GRADUALLY INCREASING AND THAT IT IS RADIATING DOWN HIS (R) leg. DET INFORMED THAT MO would BE NOTIFIED OF CHANGES. DET. given 800mg MOTRIN AND TOLERATED WELL |
| 6/11/08 | HM NOTE: DET SEEN FOR MONTHLY WEIGHTS. WEIGHT 150 lbs OR 104% IBW |
| 7/1/08 | HM NOTE: DET SEEN FOR WEIGH-IN Current weight: 152.3 Current IBW: 105% |
| 03 Jul 08 | TFP Medical Officer Monthly detainee weight noted - stable |
| 1 AUG 08 | HM NOTE: DET SEEN IN TXT Room FOR WEIGHTS. WEIGHT: 149 lbs IBW: 103% |
| 04 Aug 08 | Above medical record entry noted. |
| 04 Aug 08 | HM NOTE. DET SEEN @ EMMEDPASS. DET EXPRESSED CONCERNS ABOUT CURRENT BACK PAIN AND LENGTH OF TIME TO RESOLVE ISSUE. DET ALSO STATED THERE WAS SOMETHING WRONG WITH HIS FOOT BUT WHEN ASKED WHAT WAS WRONG WITH IT HE CHANGED FOCUS TO HIS BACK. DET NOT @ INFORMED THAT MO would BE NOTIFIED. |
| | Above Medical Record entry noted. Pt with previous hx of extensive eval by Physical Therapy for above complaint seen within last several months. Will continue to monitor. To consider implementation of as needed NSAIDs for pain. |
| 7 AUG 08 | HM NOTE: Det. Seen at bravohole for c/o athletes foot between 5th and 4th digit on (R) foot. Tinactin cream given prn. |
| 08 Aug 08 | Above medical record entry noted |
| 9 Aug 08 | HM NOTE: DET RECEIVED TINACTIN CREAM FOR ATHLETES FOOT |
| 11 Aug 08 | HM NOTE: DET RECEIVED TINACTIN CREAM FOR ATHLETES FOOT |
| 12 Aug 08 | HM NOTE: DET RECEIVED TINACTIN CREAM FOR ATHLETES FOOT. BITHMUS TABS FOR UPSET STOMACH AND MOTRIN FOR GEN HA |

**DETAINEE'S IDENTIFICATION NUMBER:**

ISN - 10026

CHRONOLOGICAL RECORD OF MEDICAL CARE
MEDICAL RECORD
STANDARD FORM 600 (rev. 5/85)

NSN 7540-00-634-4176 AUTHORIZED FOR LOCAL REPRODUCTION

**MEDICAL RECORD** | **CHRONOLOGICAL RECORD OF MEDICAL CARE**

**DATE** | SYMPTOMS, DIAGNOSIS, TREATMENT TREATING ORGANIZATION (Sign each entry)
JTF – JMG, Medical Department, Guantanamo Bay, Cuba

10/6/08 Detainee seen for 2 complaints.
(1) C/o chronic low back pain worse on R c̄ some radiation. W/u in past included MRI in Iran per pt c̄ L4-L5 disc [illegible] and spinal stenosis. Here had CT of L spine showing L4-5 disc disease. Reports doing physical tx & exercise which have stabilized pain – no worse but ∅ better. No urinary sx. No [illegible] BM. No weakness. No weight loss. No fever.

Exam 5/5 quads, hamstring, DF, PF, hip flexion
sensation intact to LE (b)
reflexes 2+ @ ankles & patella

A/P Mechanical low back pain s̄ red flags.
- declined NSAIDS or tylenol or [illegible] dose
- declined trial of [illegible]
- advised him to continue c̄ exercises
- follow

(2) C/O blurred vision c̄ reading giving him HA. Wearing glasses from [illegible] opto visit. States can read [illegible] blurred @ times (can't see page) and get HA.
Will arrange opto eval

[redacted]

29SEP08 [illegible] HM Note: Det wants to stop cream administered to feet to see if they are getting better or worse. In this corpsman's opinion, feet look much better than previous week. Very little dry skin noted. [redacted]

29SEP08 [illegible] HM Note: Det C/O slight stomach pain but refused meds. Det also C/O bitter taste that he has had from the water over last 2 days, but better today. Det states he only drinks 1 bottle $H_2O$ / Day. Det states urine is medium yellow. Advised det to drink more water throughout the day. [redacted]

Above noted [redacted]

**DETAINEE'S IDENTIFICATION NUMBER:**

N026

CHRONOLOGICAL RECORD OF MEDICAL CARE
MEDICAL RECORD
STANDARD FORM 600 (rev. 5/05)

UNCLASSIFIED//FOUO

| MEDICAL RECORD | | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|---|
| DATE | SYMPTO | IAGNOSE, TREATMENT TREATING ORGA... ATION (Sign each entry) JTF—JMG, Medical Department, Guantanam... ay, Cuba |

P.T. Note

20 NOV 08

S: 47 yo ♂ for FU of LBP. Pain has recently now started to irradicate down ℓ posterior thigh. Pain does not extend past ℓ knee. He has been given lumbar stabilization exercises in the past that pt reports has helped ↓ lower his pain. current VAS 3/10 - Intermittent.

O: Posture: elevated ® Crest / PSIS / ASIS
   (+) Weber Barstow (L) 7®
   Active L spine
   ✓ -90°   1 = 20°   (B) SB = 25°   (B) Rot = 45°
   5/5 (B) LE MMT
   (+) SLR on (L)
   (-) FABER (B)
   (-) Distraction (B)
   DTR symmetrical MSR L4 - S1
   Denies sensory deficits

A: DDD / DJD L4-5 via CT results dated Nov 07

P: Progress lumbar stabilization exercises to Thera-Band
   Det ▓▓▓ will handle acquiring the Thera-ball
   FU PRN

DETAINEE'S IDENTIFICATION NUMBER:

10026

CHRONOLOGICAL RECORD OF MEDICAL CARE
MEDICAL RECORD
STANDARD FORM 600 (rev. 2105)

UNCLASSIFIED//FOUO

HADI-1-027794

UNCLASSIFIED//FOUO

NSN 7540-00-634-4176                                    AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT TREATING ORGANIZATION (Sign each entry)<br>JTF-IMG, Medical Department, Guantanamo Bay, Cuba |

05 — 10      TFP MO

1106      Detainee seen @ beanhole to discuss medical
concerns. Detainee reports that he has had low back
pain for a very long time. He has had multiple x-rays + a
CT to evaluate. He reports that the pain has ↑'d
since August was 3-4/10 + now is 5-6/10. Radiates down
Ⓛ leg. Denies weakness. ? numbness. Pain radiates into foot
otherwise s̄ complaint

O: WDWN ♂ in NAD
      Alert
      nl strength c̄ standing on toes, heels, + squatting

A: Sciatica

P: ① Will review x-ray + CT scans
   ② Detainee does not want to use NSAIDs
   ③ Will establish tx plan p̄ x-ray review
   ④ Detainee verbalizes understanding

DETAINEE'S IDENTIFICATION NUMBER:

1 0 5 2 6      /

UNCLASSIFIED//FOUO

HADI-1-027819

UNCLASSIFIED//FOUO

# Medical Summary

**Date of summary:** 2011 July

**Detainee Name:** Hadi

**Medical History:**

1) Latent TB
   a) Completed 9 months INH
2) Lumbar degenerative disc disease
   a) L4-L5 on CT 01/2010
   b) Ortho eval 01/2010 and 11/2010
   c) Traction 2-3 x per week with good results - Resolved
   d) Tens unit prn-Resolved
   e) H/o medrol use
   f) Saw PT Jan 2011 for exercises
   g) Daily ASA
3) OA knees
   a) Saw ortho as above
   b) Synvisc injection 03/2010; may repeat
   c) Steroid injection no help
4) Hyperlipidemia
   a) LDL 166 in Jul 2010 125.8 – May 2011
   b) Declined all meds except ASA (based on Framingham risk)
5) Intermittent non-traumatic rib pain
   a) Eval negative
6) H/o laparotomy in 1980s for liver lac secondary to soccer injury
7) Mass removed from back Dec 2010 – pathology negative
8) Cardiac stress test (May 2011) – Negative
9) Sinus Bradycardia

**Allergies: NKDA**

**Suicide Attempts: None**

**Recent Hunger Strikes: Current since March 2011 Resolved 23-March 2011**

**Routine Annual Heath Maintenance Exam – Completed May 06-2011**

UNCLASSIFIED//FOUO

HADI-1-027892

NSN 7540-00-634-4176    AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT TREATING ORGANIZATION (Sign each entry) JTF –JMG, Medical Department, Guantanamo Bay, Cuba |
|---|---|

11/19/12 — S] Pt asked to see doctor re chronic low back pain just radiates into pit in thigh and down L. Prior known to have Degenerative Disk Dz ad has benefited from various modalities in past including PT for exercises, Traction, Tens unit and short term tapered Corticosteroids. Last PT eval ~1yr ago ad would like to see again. Also wonder if inserts would be of any value. Does not want medications but UN OB gives possible prn Tylenol if sleep disturbed. On in Past confirmed DDD.

O] Antalgic gait
Will review Xrays

A] Degenerative Disc Dz L4-L5

P] PT following
Podiatry eval ± inserts
Tylenol PRN

Dr AP ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

DETAINEE'S IDENTIFICATION NUMBER:

**10026**

UNCLASSIFIED//FOR OFFICIAL USE ONLY
Not Releasable to Detainee or Public

Exam Results

# Exam Results

| | |
|---|---|
| **Name:** D JTF010026 | **Patient ID/MR #:** 20/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   **Patient DOB:** 20070427 |
| **Exam Description:** CT, LUMBAR SPINE, W/O CONTRAST MATERIAL | **Accession #:** 012417023255   **Date Of Exam:** 20170123 |
| **Referring Physician:** OUTSIDE PROVIDER | |

## FINAL REPORT: CT, LUMBAR SPINE, W/O CONTRAST MATERIAL AT 1951 HOURS

**DIAGNOSIS: LUMBOSACRAL CT WITHOUT CONTRAST**

**HISTORY:** Male patient with neuroclaudication and radiculopathy. Please evaluate for any bony/joint pathology.
.

**TECHNIQUE:** Multiple axial CT images of the lumbar spine were obtained without contrast with coronal and sagittal reformats.

**COMPARISON:** Lumbar spine CT 8/19/2014, 11/6/2007.

**FINDINGS:** There is minimal anterior wedging of T12 and L1 which is stable to 2014. The L2 superior endplate Schmorl's node is stable. Vertebral body heights are otherwise maintained. There is approximately 4 mm anterolisthesis L4 on L5 which has slightly increased from prior. Alignment is otherwise anatomic. There is mild disc space narrowing at L4-L5 and L5-S1 is unchanged. Sclerotic endplate degenerative changes at L5-S1 and small anterior osteophytes involving most of the lumbar vertebrae are noted. Atherosclerotic calcifications are noted in the aorta and iliac arteries, otherwise the paravertebral soft tissues are all unremarkable.

Review of the axial images shows the following:

**T11-T12:** On the sagittal images only, there is ligamentum flavum calcification causing mild left-sided bony neural foraminal narrowing. There is no significant bony spinal canal narrowing.

**T12-L1:** There is ligamentum flavum calcification and hypertrophic facet changes causing mild bony bilateral neural foraminal narrowing. No significant bony spinal canal narrowing.;

**L1-L2:** There is ligamentum flavum calcification and hypertrophic facet changes causing severe bony left neural foraminal narrowing and mild right neural foraminal narrowing. There is no significant bony spinal canal narrowing.;

**L2-L3:** There is ligamentum flavum calcification and hypertrophic facet changes

Not Releasable to Detainee or Public
UNCLASSIFIED//FOR OFFICIAL USE ONLY

HADI-1-036783

Case 1:17-cv-01928-EGS   Document 1-1   Filed 09/21/17   Page 25 of 84
UNCLASSIFIED//FOR OFFICIAL USE ONLY
Not Releasable to Detainee or Public

Exam Results

causing at least moderate right and moderate left neural bony foraminal narrowing. No significant bony spinal canal narrowing.

**L3-L4:** There is ligamentum flavum thickening, calcification and hypertrophic facet changes causing mild bilateral bony neural foraminal narrowing but no significant spinal canal narrowing;

**L4-L5:** There are ligamentum flavum calcifications and severe hypertrophic facet changes causing severe bony bilateral neural foraminal narrowing but no significant spinal canal narrowing;

**L5-S1:** There are ligamentum flavum calcifications and severe hypertrophic facet changes causing severe bony bilateral neural foraminal narrowing but no significant spinal canal narrowing..

**IMPRESSION:**

1. Multilevel degenerative changes of the lumbar spine with multilevel varying degrees of bony neural foraminal narrowing as described.

2. Mild interval worsening of L4 on L5 degenerative grade 1 spondylolisthesis.

Note: If further imaging evaluation of soft tissue/disc contributing portions to the degenerative changes of the lumbar spine is clinically desired, recommend MRI.

++++++++++++++++++++++++++++++++++++++++++++
**Computerized Tomography Study Report Summary Dose Statement**

The Total CTDI(vol) mGy and Total DLP mGy-cm calculated for this examination are:
CTDI(vol) = 24.33mGy
DLP = 711mGy-cm

CRCPD suggested CTDI(vol) and NMCP Historical Reference DLP levels are:
CT Head < 75mGy // 850mGy-cm
CT Abdomen < 25mGy // 900mGy-cm
CT Chest < 25mGy // 700mGy-cm
Pediatric Abdomen < 20mGy // TBD
CT Brain Perfusion < 500mGy // TBD
Note: Multiple phase acquisitions required by some examination protocols may result in a total CTDI(vol) and total DLP that exceed the single acquisition reference standards listed above.

Transcribed Date and Time: 01/25/2017 08:15:00
Dictated and Signed by: ███████████
Approved by: ███████████

R191125.HTM[7/5/2017 3:22:09 PM]

# Exhibit D

DEPARTMENT OF DEFENSE
MILITARY COMMISSIONS DEFENSE ORGANIZATION
1620 DEFENSE PENTAGON
WASHINGTON, DC 20301-1620

1 September 2017

MEMORANDUM FOR THE CONVENING AUTHORITY

SUBJECT: Emergency Request for Expert Assistance – Neurological Surgery

     Mr. Nashwan al-Tamir (ISN 10026), the Accused in the case of *United States v. Abd Al Hadi Al Iraqi*, by and through counsel, respectfully requests the Convening Authority appoint and fund James C. Cobey, MD, MPH, an expert consultant in the field of orthopedic surgery, to ensure Mr. al-Tamir can participate in his defense and is physically fit to stand trial.

**Overview**

     This is an emergency request. Mr. al-Tamir must prepare for scheduled 2-6 October 2017 pretrial hearings, but is experiencing debilitating back pain and other emergent symptoms that are preventing him from focusing on his case or engaging in meaningful communication his defense counsel. His defense counsel have been aware of Mr. al-Tamir's chronic back ailment for some time, as have the Prosecution and the Commission. Defense counsel have witnessed, however, a steady deterioration in Mr. al-Tamir's health over the past two months and now face what appears to be a medical emergency. Yesterday, defense counsel consulted with several experts and learned for the first time that Mr. al-Tamir's symptomology requires immediate attention and that, if he is not treated properly and immediately, he could suffer irreparable harm including paralysis.

     Immediately before the August 2017 pretrial hearings, JTF-GTMO declared Mr. al-Tamir medically unfit to attend attorney-client meetings. Although he was later cleared to meet with his defense counsel, his pain has consistently prevented him from participating in his defense since before the August hearings. Since the August hearings, the situation has become dire. Mr. al-Tamir is losing sensation in his legs and is experiencing the loss of muscle control/motor skills. He periodically loses control of his bladder.

     The Defense has sought the preliminary opinion of Dr. Cobey, an orthopedic surgeon. In Dr. Cobey's opinion, this rapid decline in health and associated symptomology demands immediate action. He has informed us:

     These symptoms suggest compression of the spinal cord and/or spinal nerves and require immediate diagnostic imaging and surgical intervention by an experienced neurosurgeon or orthopedic surgeon. Based on these symptoms, there is an urgent need for diagnostic testing and surgical intervention. While MRI is the preferred imaging technique, a CAT scan can also be performed in conjunction with a myelogram to ascertain the nature and extent of compression. High dose corticosteroids should also be considered to reduce inflammation associated with presumed spinal compression.

SUBJECT:  Emergency Request for Expert Assistance – Neurological Surgery

> The current treatment plan as reported, consisting of an anesthesiologist visiting in September and a neurosurgeon visiting in October, is unacceptable, inconsistent with the standard of care, and likely to result in permanent neurologic damage.  I would not expect a simple epidural injection with steroids to have any real effect on a compression problem.[1]

Dr. Cobey concludes, "I urge you in no uncertain terms to take immediate action to effectively diagnose and treat the detainee's medical emergency."[2]

Because Mr. al-Tamir is unable to participate in his defense and may be physically unfit to stand trial, the Convening Authority must appoint and fund Dr. Cobey to consult with the Defense.  If the United States is unable to render due medical care to Mr. al-Tamir in Guantanamo Bay, the Convening Authority and JTF-GTMO should be prepared to transfer Mr. al-Tamir to a location where he may receive the medical attention required for him to continue to participate in his defense.  Because time is of the essence, the Defense intends to file a motion for emergency relief from the Commission at the earliest opportunity.

### Case Posture

Mr. al-Tamir's case is in the pretrial phase.  During this phase and throughout the case, Mr. al-Tamir has a right to participate in in the preparation of his defense.  Issues currently pending before the Commission include a variety of areas in which Mr. al-Tamir's participation is critical.  Similarly, outside of court, Mr. al-Tamir must be well enough to participate in attorney-client meetings.  The Defense is in the early stages of conducting merits and mitigation investigations, both of which require significant consultation between Mr. al-Tamir and members of his defense team.

Pretrial hearings in the case are scheduled for 2-6 October 2017.  Among other issues, these hearings will focus on the remaining procedural steps required before a cross-examination of Ahmed al-Darbi, a Prosecution witness who recently gave deposition testimony under direct-examination.  The prerequisites to the cross-examination, and the cross-examination itself, must occur as soon as possible, as the Convening Authority has entered into a contract to release Mr. al-Darbi from Guantanamo Bay in February 2018, at which point, according to the Prosecution, Mr. al-Darbi will no longer be an available witness.

If the Convening Authority refuses to appoint and fund Dr. Cobey, Mr. al-Tamir will be unable to assist Defense counsel in preparing for cross-examination of Mr. al-Darbi and is likely to be medically unable to attend the cross-examination, resulting in a delay in the proceedings.  Such a delay could deny Mr. al-Tamir the ability to cross-examine Mr. al-Darbi altogether.  Time is of the essence.

---

[1] Enclosure A (Letter from Dr. James Cobey dated 1 September 2017).
[2] *Id.*

SUBJECT:  Emergency Request for Expert Assistance – Neurological Surgery

### Mr. al-Tamir's Medical Status

As documented in his medical records, Mr. al-Tamir has sought treatment for chronic and worsening back pain since 2006.[3]  In 2007, Mr. al-Tamir presented low back pain and right side sciatica, resulting in a diagnosis of degenerative disc disease between the L4 and L5 vertebrae.[4] A computerized tomography scan ("CT scan") confirmed the diagnosis.[5]

In 2008, Mr. al-Tamir was seen for recurring back pain that was, at that point, deemed chronic.  Doctors noted in medical records: "Detainee seemed unsteady while standing."[6]  By June of 2008, Mr. al-Tamir's back pain had increased to include pain that radiated down his left thigh.[7]  By August 2008, doctors noted: "Detainee expressed concern about current back pain and length of time" it has taken to resolve the issue.[8]

Mr. al-Tamir continued to seek treatment through 2008 and into 2009.  In August 2009, he reported flare-ups and pain that affected the left side of his body, to include pain radiating from his back to his thighs.  Medical providers performed various diagnostic tests but failed to cure the ailment or the pain.  X-rays and CT scans continued to show degenerative disc disease.[9]

In early 2010, a bulging mass was identified on the left side of Mr. al-Tamir's spine.[10] Doctors performed a biopsy on the soft tissue mass.  Pathology reports were negative.[11]  The mass remains today.

Throughout 2010, Mr. al-Tamir continued to be seen for chronic back pain.  In June 2010, he again reported pain that ran down left side of his leg.[12]  Throughout 2010, he received physical therapy, traction table therapy, and regular treatments with a Transcutaneous Electrical Nerve Stimulator unit.[13]  These therapies and treatments were ineffective.

In September 2010, Mr. al-Tamir's medical records reflect he was diagnosed with spinal stenosis.  Spinal stenosis is an abnormal narrowing of the spinal canal.  The narrowing of the spine causes a restriction to the spinal canal which, aside from pain, can result in neurological deficits such numbness and loss of motor control.[14]  It was at this point, seven years ago, that a doctor first proposed the possibility of surgery.[15]

---

[3] Enclosure D at HADI-1-027900.
[4] Enclosure D at HADI-1-027741.
[5] Enclosure D at HADI-1-027794, HADI-1-027789.
[6] Enclosure D at HADI-1-027780.
[7] Enclosure D at HADI-1-027781.
[8] *Id.*
[9] Enclosure D at HADI-1-027819.
[10] Enclosure D at HADI-1-027854.
[11] Enclosure D at HADI-1-027892.
[12] Enclosure D at HADI-1-027829.
[13] Enclosure D at HADI-1-027892.
[14] http://www.mayoclinic.org/diseases-conditions/spinal-stenosis/home/ovc-20320403.
[15] Enclosure D at HADI-1-027847.

SUBJECT:  Emergency Request for Expert Assistance – Neurological Surgery

In November 2011, Mr. al-Tamir was again diagnosed with lumbar spine disc herniation and spinal stenosis.  During this timeframe, Mr. al-Tamir reported pain radiating to his right buttock.[16]

Throughout the remainder of 2011 and 2012, Mr. al-Tamir was seen for chronic low back pain.  In January 2012, Mr. al-Tamir again reported low back pain radiating to his left knee.[17]  In September 2012, he again reported sharp pain radiating from his back toward his left knee.[18] At this point doctors ordered further testing, but it is not clear from the medical records whether that testing was performed.[19]

Mr. al-Tamir's back pain persisted and his health gradually declined throughout 2012.  In November 2012, he continued to report radiating pain from his low back down through his thighs, but, for the first time, reported feeling "pins and needles sensations" in his toes."[20]

Mr. al-Tamir continued to suffer from back pain between 2013 and 2017, but, despite multiple requests for information and records, the Prosecution has failed to provide complete medical discovery—a failure that has contributed to the Defense not understanding the severity of Mr. al-Tamir's situation until recently.  Last week, on August 25, 2017, the Defense received a smattering of random medical records from 2007, 2013, 2014, 2016 and 2017.  To date, the Prosecution has not produced a comprehensive set of Mr. al-Tamir's medical records.  The Defense has not received any medical records from 2015, very few records from 2016, and one CT scan exam result from January 2017 that was not produced until August 25, 2017.

A January 2017 lumbar CT scan (without contrast) of Mr. al-Tamir's spine showed anterior wedging of T12 and L1 and anterolosthesis on L4 and L5, which had increased since the previous CT scan.  Additionally, there were degenerative changes to L4-S1.  It was at this time, a decade into Mr. al-Tamir's ordeal, that an MRI was first proposed.[21]

Mr. al-Tamir's declining health continued to degrade.  In August 2017, he began to experience an increase in the loss of sensation in both feet.  The week of August 7, 2017, during attorney-client meetings in preparation for the August pretrial hearings, Mr. al-Tamir began to feel tingling throughout his body..  He began experiencing an increased loss of sensation in both hands and both legs, as well as an increase in his muscle weakness.  During this period, Mr. al-Tamir described to his defense counsel that his feet felt heavy and weighed down.  He also described an increase in the level, sharpness, and frequency of his pain.

At an attorney-client meeting on August 9, 2017, defense counsel noticed Mr. al-Tamir open and close his left hand repeatedly during the six-hour meeting.  Mr. al-Tamir explained that his hand was numb and he was opening and closing it in an attempt to force feeling back into it. By that evening, Mr. al-Tamir's legs had become so weak that he could not stand up straight or walk.

---

[16] Enclosure D at HADI-1-027738.
[17] Enclosure D at HADI-1-027894.
[18] Enclosure D at HADI-1-027699.
[19] Enclosure D at HADI-1-027708, HADI-1-027709.
[20] Enclosure D at HADI-1-027675.
[21] Enclosure D at HADI-1-036783.

SUBJECT:  Emergency Request for Expert Assistance – Neurological Surgery

On August 10, 2017, a doctor examined Mr. al-Tamir at his detention location.  The doctor determined that Mr. al-Tamir's deteriorating condition required transportation to the hospital for additional tests.  Some tests were conducted, but, apparently, a prescribed CT scan could not be performed because the hospital staff failed to properly inject intravenous contrast dye for the scan.  Following this hospital visit, Mr. al-Tamir was declared medically unfit for attorney-client meetings.

Although his condition did not improve, JTF-GTMO cleared Mr. al-Tamir to attend the 14-17 August pretrial hearings.  Due to his constant discomfort and concern over bladder control, he attended only one day of the session—a day his presence was required by the military judge.

When permitted, Mr. al-Tamir now uses a wheelchair when necessary to move within his detention facility.  On at least one occasion, he has been denied the use of a wheelchair without explanation.  He does not feel well enough to attend attorney-client meetings, which occur at Echo II, a facility he must reach by car.  Transportation to Echo II—or anywhere—is painful, and the facility is not wheelchair accessible.

As of the date of this request, Mr. al-Tamir's condition has not improved and his health continues to decline daily.  His condition has compromised his ability to participate in his own defense.  If his pain is not sufficiently relieved before the scheduled October pretrial hearings, the Defense will file a motion to abate.

JTF-GTMO staff have indicated to Mr. al-Tamir that he will be offered two forms of treatment in the coming months: on September 12, he will receive steroid injections into his back; and on October 2, a neurosurgeon will conduct an examination.

## Expert Assistance is Necessary

Expert assistance is necessary because Mr. al-Tamir's pain denies him from participating in his defense, and JTF-GTMO has demonstrated itself incapable of treating Mr. al-Tamir's condition.  Dr. Cobey must be appointed to consult with the Defense regarding why Mr. al-Tamir is suffering his pain and other symptoms and whether a remedy exists that would permit him to resume participation in his case.

No member of the Defense is qualified to assess Mr. al-Tamir's medical condition.  It goes without saying that spinal problems require assessment and treatment by medical specialists.  The urgency of Mr. al-Tamir's condition, however, was not apparent to defense counsel until a consultation with independent experts.  According to an independent assessment of Mr. al-Tamir's symptoms by Dr. Homer Vinters and Dr. Vince Iacopino of Physicians for Human Rights, Mr. al-Tamir's condition could result in permanent neurologic damage and/or paralysis if not diagnosed and treated immediately.[22]

JTF-GTMO medical staff have failed to eliminate Mr. al-Tamir's ailment or symptoms, leaving him facing a trial in which he cannot participate.  Whatever the reason for JTF-GTMO's failure, no member of the Defense can sufficiently comprehend Mr. al-Tamir's medical status and, if necessary, explain it to the Commission.  Therefore, expert assistance is required.

---

[22] Enclosure B (Letter from PHR dated 31 August 2017).

SUBJECT:  Emergency Request for Expert Assistance – Neurological Surgery

Although not medical experts, in addition to consulting with Drs. Vinters and Iacopino, defense counsel have conducted sufficient research to establish that JTF-GTMO's past treatment (conservative, non-surgical treatment) and proposed course of action (a steroid injection later in September, followed by a consultation with a neurosurgeon in October) have been and will be insufficient, if not harmful.

A conservative treatment regimen including pain relievers, anti-inflammatories, steroid injections, physical therapy, stretching exercises and decompression procedures are appropriate initial responses to chronic back pain.[23]  When patients fail to respond to conservative treatment within *six weeks* of presenting symptoms, however, current medical literature supports surgical intervention as an appropriate treatment option to relieve symptoms and restore function.[24]

Moreover, patients who initially present with an acute episode of lumbar radiculopathy can generally be managed by a primary care practitioner.  However, once a patient exhibits certain red flags, such as sensory or motor deficits, progressive neurologic deterioration or saddle anesthesia with bowel and bladder incontinence, a patient must be referred to a spinal surgeon. Patients with severe or progressive neurologic deficits *require* a referral for surgery.[25]

Sensory abnormalities in the genitals coupled with loss of bladder control and progressive loss of sensation or motor function in the legs are ominous signs that warrant urgent evaluation and treatment.  Mr. al-Tamir has complained of sensory abnormalities in the genitals and loss of bladder control.

Mr. al-Tamir has received years of conservative and ineffective treatments.  In addition to physical therapies, Mr. al-Tamir has been prescribed a multitude of medications.  After ten years and the myriad conservative treatments attempted, it is clear even to lay attorneys capable of reading medical journals that conservative treatment options have been exhausted.  During this period, the Government has allowed Mr. al-Tamir's condition to degenerate to the point where he now has sensory abnormalities in the genitals coupled with loss of bladder control and progressive loss of sensation and motor function in his legs.

Dr. Cobey has reviewed the above information and formed an initial assessment that (1) Mr. al-Tamir cannot currently engage in the activities required to meaningfully participate in his defense; (2) the standard of care requires an immediate MRI; (3) the delay to an examination by a neurosurgeon is below the standard of care; and (4) the proposed steroid injection may be contraindicated.  Dr. Cobey requires more information and an opportunity to assess it before forming a full medical opinion and advising the Defense regarding a proper course of treatment and Mr. al-Tamir's ability to participate in his defense and physical fitness to stand trial.[26]

---

[23] Enclosure C.
[24] *Id.*
[25] *Id.*
[26] Enclosure A.

SUBJECT:  Emergency Request for Expert Assistance – Neurological Surgery

**Expert Qualifications, Contact Information and Rate**

Dr. Cobey is an orthopedic surgeon with extensive experience performing spine surgery for over 30 years.  He received his medical degree from the Johns Hopkins School of Medicine, and his master of public health at the Johns Hopkins Bloomberg School of Public Health, focusing on international health.  Dr. Cobey served in the U.S. Army as chief of the Preventive Medicine Service at Fort Lewis, Washington (1971 - 1973), attaining the rank of Major and receiving the Meritorious Service Medal.  He completed his orthopedic residency in 1976 at Yale University.  Dr. Cobey shared in the Nobel Peace Prize in 1997 for his role in the International Campaign to Ban Land Mines and has extensive experience consulting on health issues with international refugee and human rights agencies.[27]

Dr. Cobey's contact information is:

James C. Cobey, MD, MPH, FACS
Johns Hopkins Bloomberg School of Public Health
4440 Garfield Street
Washington, DC 20007
cobey@att.net

The Defense estimates Dr. Cobey will require a maximum of 30 hours to consult on Mr. al-Tamir's case.  The Defense has not yet had the chance to discuss Dr. Cobey's hourly rate with him but, will supply that information at the earliest possible time.  We anticipate that it will be consistent with the hourly rates previously approved by the Convening Authority or military commissions for expert medical consultation.

This request is not a request for expert testimony.  If Dr. Comey is required to testify, Mr. al-Tamir will submit an additional request.

**Conclusion**

Mr. al-Tamir has a constitutional right to participate in his defense.  His current severe back pain and other debilitating symptoms deny him the ability to do so.  The Defense requires an expert consultant to assess Mr. al-Tamir's medical status, something the Defense is not capable doing of without expert assistance.

Additionally, failure to provide Mr. al-Tamir adequate medical care is a violation of the Eighth Amendment.  The Government, as the detaining authority, is obliged to provide medical care for those it detains.[28]  A detainee is completely dependent on detention facility medical officials for any and all medical care.[29]  Denial of medical care that results in pain and suffering that does not serve any penological purpose amounts to cruel and unusual punishment under the Eighth Amendment.[30]

---

[27] Because of the sudden emergency situation from which this request arises and the holiday weekend, we have not yet been able to obtain a curriculum vitae for Dr. Cobey, but will supply one as soon as we receive it.
[28] See *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).
[29] *Id.*
[30] *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

7

SUBJECT:  Emergency Request for Expert Assistance – Neurological Surgery


      If any additional information is required to process this request, please contact the undersigned at (703) 695-4882 or aimee.cooper@osd.mil.



                                  Respectfully submitted,


                                  Aimee M. Cooper
                                  CDR, JAGC, U.S. Navy
                                  Defense Counsel
                                  Military Commissions Defense Organization



Enclosures:
    A.  Letter from James C. Cobey, MD, MPH, FACS, dated 1 September 2017.
    B.  Letter from Drs. Homer Venters and Vincent Iacopino, dated 31 August 2017.
    C.  Articles from Medical Journals and Medically sponsored websites
    D.  Excepts of Mr. al-Tamir's medical record

# Exhibit E



Through evidence,
change is possible.

**Physicians for
Human Rights**

256 West 38th Street
9th Floor
New York, NY
10018

+1.646.564.3720
phr.org

August 31, 2017

To Whom It May Concern:

Physicians for Human Rights has learned from the Military Commissions Defense Organization that a detainee at Guantánamo Bay Detention Center complains of progressive back pain, bladder incontinence, and loss of motor and sensory function in his legs which has recently resulted in an inability to walk. The following description was shared with us today:

> *He's had back problems for years, but it has gotten dramatically worse over the past few months. He sometimes loses feeling in both of his legs; he has lost 90% of the feeling in left leg; his motor control is deteriorating; and he periodically loses control of his bladder. Last week, he was finally given a walker, but he is now unable to use it due to the loss of sensation in his legs.*

These symptoms, if accurate, are consistent with serious neurologic impairment that may be permanent if not diagnosed and treated promptly. Based on the reported symptoms, there is a possibility of cauda equina syndrome, which could result in permanent neurologic damage and/or paralysis if not diagnosed and treated immediately.

Cauda equina syndrome requires emergency diagnosis and MRI, and evaluation by a neurosurgeon for therapeutic intervention, which typically consists of high-dose corticosteroids and surgery.

We urge the authorities to be in immediate contact with medical staff so they can act in a timely manner consistent with the standard of care.

Sincerely,


Homer Venters, MD, MS
Director of Programs
Physicians for Human Rights

Vincent Iacopino, MD, PhD
Senior Medical Advisor
Physicians for Human Rights

# Exhibit F



Guantánamo prisoner Abd al Hadi al Iraqi, who says his true name is Nashwan al Tamir,
poses for the International Committee of the Red Cross in a 2014 photo taken for his
family, and provided by his attorneys.

GUANTÁNAMO

# Doctors beat Irma to Guantánamo to operate on alleged war criminal's spine

BY CAROL ROSENBERG
*crosenberg@miamiherald.com*
SEPTEMBER 07, 2017 6:19 PM

With Hurricane Irma aimed at the Caribbean, the Pentagon



New Offers Added Weekly        Close Ad
Checkout 5
Download App

Abd al Hadi al Iraqi, awaiting trial on charges he led the al-Qaida army in Afghanistan after the Sept. 11 attacks, has been using a wheelchair and experiencing pain with a bulging lower-back disc from a decade-long degenerative disease, according to his lawyers, who blamed years of "useless treatment" at Guantánamo for the situation.

But U.S. military officials described the same episode differently — as a demonstration of Department of Defense determination to provide their captives with top-notch healthcare at the isolated outpost.

At the heart of the crisis is a law forbidding any of Guantánamo's 41 captives to come to the United States for any reason. That means the small base hospital has to import expertise to address medical care rather than med-evac captives to treatment, like any of the other 5,500 residents of the base in southeast Cuba.

**RELATED: Cable casts doubt on Guantánamo medical care**

Hurricane Irma: Pentagon medical team beats storm to Gitmo | Miami Herald          9/17/17, 10:54 AM

**Hurricane Alerts and Breaking News**

Get the latest alerts by email

Enter Email Address



Hadi's lawyer, Navy Cmdr. Aimee Cooper, said the healthcare crisis was long in coming. Doctors consulted by his Pentagon defense team concluded that, based on Navy base CT scans, the Iraqi was at risk of paralysis and needed the surgery since January. Two doctors with Physicians for Human Rights, who made their diagnoses based on descriptions by the Iraqi's defense lawyers, concurred.

Cooper said the situation turned dire over Labor Day weekend, according to Hadi, who wrote in a letter Sunday that he had lost feeling below the waist, became bladder incontinent in his cell and was bought to the base hospital.

At the Pentagon, spokesman Air Force Maj. Ben Sakrisson refused to confirm that Hadi was the patient but described the base as handling a health challenge involving an unidentified detainee in parallel terms. The medical facility at Guantánamo Bay notified higher headquarters on Sunday that a detainee needed urgent medical care within 24 to 48 hours. The surgery took place early Tuesday, and doctors were still at the base Thursday monitoring the man's recovery as Irma approached.

"Obviously there's a general expectation that the Department of Defense moves slowly," Sakrisson said. "But in this case, in a 36-hour window starting with a request for specialized medical care, an aircraft was rerouted, a medical team was assembled and flown to Cuba. They diagnosed the situation, performed a surgery and the patient was in recovery — all those things happened in 36 hours, as everyone was spinning up for landfall of a potential hurricane later in the week."

**RELATED: U.S. Navy opts not to evacuate residents from Guantánamo Bay**

The team included a neurosurgeon, a neuroradiologist, an operating room nurse and a pair of neurosurgical technicians. They arrived on a Navy C-40 jet with a "couple of pallets" of equipment, Sakrisson said. They handled the case without benefit of an MRI that is being leased by the U.S. military to study the brains of other former CIA captives held with Hadi. It was still in the United States, expected to be shipped later in the month, after the hurricanes clear.

But as of Thursday, the patient Sakrisson didn't identify was "recovering at this point and things look good. Where do you draw the line on a full recovery? I wouldn't speculate on that

one."

Hadi's lawyers, meantime, are bitter. They said even after the
surgery, the military from the U.S. Southern Command to
Guantánamo have refused to provide details, despite their receipt
on Tuesday of a letter Hadi wrote Sunday before the surgery
authorizing his Pentagon-paid lawyers to consult with his doctors.

"The surgery was needed since January; they wouldn't have
needed to scramble to do it had they done it when it became
emergent in January of 2017," Cooper said. "I'm glad they got it
done; the only thing I'm concerned about is the client's health."

Moreover, she added that on Tuesday after failing to get any
health information the lawyers filed a pleading at the war court
seeking suspension of pretrial proceedings on grounds Hadi could
not participate in his defense. "I don't know that they'll abate the
proceedings. But it's the only stick I have — to get the judge's
attention."

Pentagon spokesman Sakrisson framed it differently. "A couple
members of the surgical team stayed behind to monitor the
patient's progress knowing that there is potentially a hurricane
inbound," he said. "It was everybody coming together and looking
at this individual as a human being and providing high-quality
care in a short time under an obviously stressful situation for
everybody involved."

Hadi, 56, allegedly directed and paid insurgents to carry out
attacks on U.S. and allied troops and civilians in the post 9/11
invasion of Afghanistan to hunt down Osama bin Laden and
dismantle the Taliban. Hadi was captured a decade ago, in
Turkey, and in April 2007 was brought to Guantánamo's
clandestine Camp 7 prison for former CIA captives. He was
charged at the war court in June 2014, and subsequently
announced that his true name is Nashwan al Tamir.

**MORE READING: About the war crimes trial of the
alleged al-Qaida commander**

**Never miss a local story.**

Sign up today for a free 30 day free trial of unlimited digital access.

SUBSCRIBE NOW

## IN OTHER NEWS

The Pentagon Admits There Are a Lot More U.S. Troops in Afghanistan Than We Thought



💬 COMMENTS ⌄

**SUBSCRIPTIONS**

Start a Subscription

Customer Service

eEdition

Vacation Hold

Pay Your Bill

Rewards

**SITE INFORMATION**

About Us

Contact Us

Newsletters

News in Education

Public Insight Network

Reader Panel

**SOCIAL, MOBILE & MORE**

Text News Alerts

Mobile & Apps

Facebook

Twitter

Google+

Newsletters

**ADVERTISING**

Place a Classified

Media Kit

Commercial Printing

Public Notices

Shopping

**MORE**

Copyright          Commenting Policy          Privacy Policy          Terms of
                             Service                                                        Service

# Exhibit G



Through evidence,
change is possible.

Physicians for
Human Rights

256 West 38th Street
9th Floor
New York, NY
10018

+1.646.564.3720
phr.org

September 8, 2017

The Honorable James N. Mattis
Secretary of Defense
1100 Defense Pentagon
Washington, D.C. 20301

Dear Secretary Mattis,

Physicians for Human Rights has learned from news reports that the detainee at Guantánamo Bay
Detention Center, the subject of our August 31 and September 7 letters, received spine surgery on
September 5, 2017, presumably for spinal cord/nerve decompression. We are pleased to hear this and
hope that the patient regains full neurological function in his lower extremities and urinary bladder.

We also read with interest the assertion of Department of Defense (DOD) spokesperson Air Force Maj.
Ben Sakrisson that timely emergency medical action was taken in this patient's case, following a
recommendation for "urgent medical care" within 24-48 hours, and that this is an example of the capacity
to effectively diagnose and treat emergency medical conditions at Guantánamo Bay Detention Center.
(Carol Rosenberg, "Doctors beat Irma to Guantánamo to operate on alleged war criminal's spine," *Miami
Herald*, Sept. 7, 2017)

We are deeply concerned that the facts of this case do not support the DOD's public claim of appropriate,
high-quality, and timely medical/surgical care. With all due respect to the medical personnel who traveled
on short notice to Guantánamo and performed the therapeutic intervention, especially with Hurricane
Irma approaching, this case exemplifies serious problems in the accurate and timely diagnosis of
emergency medical/surgical conditions.

As you know, the patient had a history of back pain and a January 2017 CAT scan showed evidence of
severe neural encroachment that could easily progress to spinal stenosis. (Dr. James Cobey, Letter to
Defense Counsel, Sept. 5, 2017) This condition, if untreated, can result in spinal cord and/or nerve
compression leading to permanent neurologic disabilities. We know from the patient's extensive
communications with his attorneys that he reported to Guantánamo medical personnel having symptoms
of progressive lower extremity weakness during the past several months. A CAT scan/myelogram was
reportedly conducted in July 2017, but the results of that diagnostic imaging study have not been shared
with the patient's legal team, nor have any medical records from January 23 2017 until the present. In
addition, we understand that the patient reportedly experienced symptoms of urinary incontinence during
the past several weeks. This is a medical/surgical emergency that should have prompted immediate
diagnosis with an MRI or CAT scan/myelogram and treatment with surgical decompression within 24-48
hours.

It is common medical knowledge, at the most basic level, that spinal stenosis associated with increasing
motor weakness requires urgent diagnosis and surgical treatment. When this patient experienced
symptoms of urinary incontinence weeks ago, in addition to motor weakness, the medical staff should
have acted immediately, but did not. Instead, we understand that the medical plan was to have an
anesthesiologist travel to Guantánamo on September 12, 2017 for steroid injections and for a
neurosurgeon to travel to Guantánamo on October 2, 2017. If true, this plan is a stunning example of
inappropriate diagnosis and treatment for a true medical emergency.

PHR medical staff were contacted by the patient's legal counsel on August 31, 2017, verbally reviewed the
patient's clinical status, and provided a medical opinion on a course of action based on the reported
symptoms. Recognizing the urgency of the circumstances, PHR clinicians immediately wrote a letter
dated August 31, 2017 to camp authorities expressing concerns that the patient receive immediate

diagnostic and therapeutic intervention for presumed spinal cord/nerve compression within 24-48 hours, including transfer to an appropriate medical facility if necessary.

We understand that, after the patient's legal counsel relayed PHR's letter, Guantánamo administration and medical personnel attended to this matter and arranged for urgent care. Surgery was reportedly conducted on September 5th, four days after the PHR recommendation was transmitted to the administration. We have not yet heard what the surgery entailed or what the patient's condition is and would very much like to be updated.

As you may know, it is common for such patients to experience significant neurological function immediately after spinal cord/nerve decompression and in subsequent weeks, but we do not know this to be the case thus far. The patient's post-operative course will reveal the extent to which deviations from the standard of care may have permanently affected his neurological function. Suffice it to say, the significant delay in diagnosis and surgical intervention should not be considered acceptable by any medical personnel.

We understand that the patient's legal team has not been able to obtain the patient's medical records beyond January 2017, the relevant period of time for the patient's current clinical condition. All medical records should be shared with the patient's legal counsel to ensure adequate medical care. Health professionals cannot provide meaningful care or obtain legitimate consent when their patients are denied access to their own records.

We urge our Guantánamo medical colleagues to review this case in detail with camp administrators. In addition to the quality of care issues in this case, we urge them to address the need for timely and urgent access/transfer to tertiary medical care facilities. We know that there are many emergency medical conditions that require immediate medical and/or surgical intervention at a tertiary facility, for example: acute myocardial infarction, hemorrhagic stroke, ruptured aortic aneurysm, etc. Relying on limited medical and surgical capacities at Guantánamo in combination with a prohibition for transfer to the United States, including for emergency medical care, is a policy that will undoubtedly result in medical negligence. This is unfair to the medical personnel at Guantánamo and exposes them and the facility to serious legal and professional liability. Most importantly, it subjects detainees to the risk of substandard care and its health consequences.

We stand ready to support efforts by Guantánamo medical personnel to effect policy changes that are commensurate with medical and surgical imperatives and the standard of care. Thank you for your consideration.


Sincerely,

Homer Venters, MD, MS
Director of Programs
Physicians for Human Rights

Vincent Iacopino, MD, PhD
Senior Medical Advisor
Physicians for Human Rights

CC:

Admiral Kurt W. Tidd
Commander, United States Southern Command

Rear Admiral Edward B. Cashman
Commander, Joint Task Force Guantánamo, United States Southern Command

# Exhibit H

MILITARY COMMISSIONS TRIAL JUDICIARY
GUANTANAMO BAY, CUBA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ABD AL HADI AL IRAQI** | **AE 099D**<br><br>**Defense Notice**<br>of Mr. al-Tamir's Current Medical Status<br>Regarding AE 099 Emergency Motion to<br>Abate the Proceedings Until Mr. al-Tamir is<br>Physically Competent to Stand Trial<br><br>**18 September 2017** |

1. **Timeliness.**

   This Notice is filed timely pursuant to Military Commissions Trial Judiciary Rule of Court 3.7.c.(1). It is filed subsequent to AE 099C – Order, but is not the Defense's Response to that Order.[1]

2. **Notice of Current Medical Condition.**

   1. It appears that Mr. al-Tamir's physical condition has either deteriorated significantly since the filing of AE 099(Sup)[2] or was worse than was understood at the time of the filing.

   2. In his letter received on 12 September 2017, Mr. al-Tamir stated that the surgeon informed him that he would have another operation in six to ten weeks time to address his upper-body neurological problems.[3]

---

[1] This Notice of Current Medical Condition is not the Defense response to AE 099C – Order. The Defense will respond to that Order in a timely fashion after it learns as much as possible about Mr. al-Tamir's next surgery, which per the facts set forth below may be happening today, 18 September 2017.

[2] AE 099(Sup) Defense Supplement to Emergency Motion to Abate the Proceedings Until Mr. al-Tamir is Physically Competent to Stand Trial.

[3] AE 099(Sup) at 2-3.

3.   On 14 September 2017, the Defense was informed that instead of waiting the six to eight weeks his doctors originally prescribed, Mr. al-Tamir will undergo a second operation on Tuesday or Wednesday, 19 or 20 September.  The Defense learned of this apparent change in plans solely because the Legal Advisor to the Convening Authority reached out to the Military Commissions Defense Organization's Deputy Chief Defense Counsel (DCDC) to inform him of it.  In addition to the surgery being moved up, the Legal Advisor informed the DCDC that Mr. al-Tamir would be unable to meet with his counsel for four to six weeks following the operation.[4]

4.   Late in the afternoon of 15 September 2017, the Defense was informed by Government counsel in a phone call that the operation might in fact be performed on Monday, 18 September.  Government counsel confirmed that Mr. al-Tamir would be unable to meet with Defense counsel for four to six weeks following the impending operation, but did not otherwise provide any additional information about Mr. al-Tamir's medical condition.

5.   On the evening of 15 September 2017, the Defense received another letter from Mr. al-Tamir.  Based on a preliminary translation, the Defense understands the following:

a.   Mr. al-Tamir's symptoms have become progressively worse since the first operation.  Mr. al-Tamir describes worsening in both lower- and upper-body symptoms.

b.   By 12 September 2017, the Camp Doctor had become sufficiently concerned that he contacted the surgical team.  On that date the decision was made to fly the surgeons back to Guantanamo on Sunday or Monday, 17 or 18 September, for another surgery on Mr. al-Tamir's cervical spine.

---

[4] Email from COL Wayne Aaron to BGen John Baker dated 14 September 2017 (redacted) (Attachment B hereto).

c.  The medical staff informed Mr. al-Tamir that the new surgery would require a special bed not available in Guantanamo Bay, and that there has been difficulty locating "metal" to be placed into his spine as part of the operation.

d.  The medical staff also informed him that the surgical team will include an additional medical expert for this surgery, a "bone specialist."

e.  Mr. al-Tamir continues to require steroids for pain and his other symptoms up to three times per day.  He continues to experience incontinence.

6.  As explained in previous filings, since the onset of Mr. al-Tamir's medical emergency, Joint Task Force has denied the Defense all information and access to their client (with the exception of two letters he has been able to write when steroids have made it possible). Defense counsel have emailed JTF repeatedly attempting to obtain any information at all about Mr. al-Tamir's condition since his operation, to no avail.[5]  When Defense counsel were finally told they were "welcome to submit a special request form . . . to request arrangement of an expedited phone call with your client"[6] and did so, the request was denied.[7]  So was Defense counsel's special request for a meeting with Mr. al-Tamir.[8]  So was their routine request for meetings with him.[9]

7.  Compounding JTF's virtual cut-off of information about Mr. al-Tamir, the Government's production of medical records to the Defense remains incomplete and, more important, virtually useless to the need at hand, which is determination of Mr. al-Tamir's *current* fitness to stand trial.  Even though Mr. al-Tamir has now had at least two CT scans since July

---

[5] *See* Email chain between Defense counsel and SOUTHCOM (Attachment D hereto).

[6] Att. D at 1.

[7] Email from SOUTHCOM to Defense counsel dated 14 September 2017 (Attachment E hereto).

[8] Email from SOUTHCOM to Defense counsel dated 14 September 2017 (Attachment F hereto).

[9] Email from SOUTHCOM to Defense counsel dated 15 September 2017 (Attachment C hereto).

3

(the most recent reportedly conducted in connection with his first operation), the Defense has received neither of them. The most recent medical records produced date from March 2017. Without the most current medical information, the Defense cannot protect Mr. al-Tamir's right to fair proceedings or his health.

8.   Worse yet, many of these records – including some of the most important, relating to information taken from Mr. al-Tamir around the time of his January 2017 CT scan – have been classified at the SECRET level. There is no conceivable national security aspect to these records (and indeed they are in facial violation of the classification rules because none of them are paragraph marked). Because these records have been marked as classified, the Defense cannot show them to its experts nor question them about their contents. The Defense has submitted the most important of these records for expedited classification review, but that is no substitute for receipt of properly marked – as unclassified – discovery in the first place, especially in light of the critically time-sensitive nature of Mr. al-Tamir's evolving medical ordeal.

9.   For all of these reasons, the Commission's sole source of information to date about Mr. al-Tamir's medical condition has evidently come from the letters that he has been able to write to Defense counsel. That is inexcusable, given that his condition has become more and more critical to the continued viability of these proceedings and given that it is the Government, not the Defense, that is immediately privy to all of the information about his treatment and medical condition.

10. The Defense will respond to AE 099C – Order with additional information and a request for appropriate relief.

3.   **Attachments.**

    A.   Certificate of Service dated 18 September 2017.

    B.   Email from COL Wayne Aaron to BGen John Baker dated 14 September 2017 (redacted).

    C.   Email from SOUTHCOM to Defense counsel dated 15 September 2017.

    D.   Email chain between Defense counsel and SOUTHCOM.

    E.   Email from SOUTHCOM to Defense counsel dated 14 September 2017.

    F.   Email from SOUTHCOM to Defense counsel dated 14 September 2017.

Respectfully Submitted,

//s//
BRENT RUSHFORTH
Pro Bono Counsel

//s//
JEFFREY A. FISCHER
CAPT, JAGC, USN
Detailed Defense Counsel

//s//
AIMEE COOPER
CDR, JAGC, USN
Detailed Defense Counsel

//s//
ADAM THURSCHWELL
Assistant Defense Counsel

# ATTACHMENT A

## CERTIFICATE OF SERVICE

I certify that on 18 September 2017, I filed **AE 099D Defense Notice** of Mr. al-Tamir's Current Medical Status Regarding AE 099 Emergency Defense Motion to Abate the Proceedings Until Mr. al-Tamir is Physically Competent to Stand Trial, with the Office of Military Commissions Trial Judiciary and served on Government counsel of record.


//s//
ADAM THURSCHWELL
Assistant Defense Counsel

# ATTACHMENT B

## Thurschwell, Adam Mr OSD OMC Defense

| | |
|---|---|
| From: | Aaron, Wayne J COL USARMY OSD OMC (US) ███████████████ |
| Sent: | Thursday, September 14, 2017 5:34 PM |
| To: | Baker, John G BGen OSD OMC Defense |
| Cc: | Thurschwell, Adam Mr OSD OMC Defense; Cooper, Aimee M CDR OSD OMC Defense; Schwartz, Michael A CIV OMC DEFENSE |
| Subject: | Nashwan (UNCLASSIFIED) |
| Signed By: | ███████████████ |

CLASSIFICATION: UNCLASSIFIED


Sir - I received a phone call a little while ago from Gary Brown, advising that Nashwan will be having a 2nd surgery Tues or Wed of next week.  This is not particularly good news, since it was hoped there would be a much longer recovery period between surgeries.  He further advised that counsel would be unable to meet with their client for 4-6 weeks after the surgery.  I expressed the team's frustration in trying to get information before/after the last surgery, and he replied that's why he was calling ███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████


WJA
CLASSIFICATION: UNCLASSIFIED

9

# ATTACHMENT C

**Thurschwell, Adam Mr OSD OMC Defense**

| | |
|---|---|
| **From:** | Cooper, Aimee M CDR OSD OMC Defense |
| **Sent:** | Friday, September 15, 2017 5:23 PM |
| **To:** | Thurschwell, Adam Mr OSD OMC Defense ███████████████ ███████ |
| **Subject:** | Fwd: Visitation Request for ISN: 10026 on 26 September - 6 October 2017 (UNCLASSIFIED) |

███████████████████████████████████████████████

███████████████

Begin forwarded message:

From: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS ██████████████

Date: September 15, 2017 at 5:20:44 PM EDT

██████████████████████ SGT USARMY OSD OMC (US)"
██████████████, SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
███████████████████████████████████████████████

Cc: "Cooper, Aimee M CDR OSD OMC Defense"
████████████ OSD OMC DEFENSE"██████████████████████████████
█, "████████ OSD OMC Defense"██████████████████████ >, ██████A CTR
(US)"

Subject: RE: Visitation Request for ISN: 10026 on 26 September - 6 October 2017 (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

ALCON,

Your requests for AM and PM meetings for 26 September - 6 October are DENIED.

V/r,
LSS

-----Original Message-----
From: ████████ Raul A SGT OSD OMC Defense ████████████████
Sent: Tuesday, September 12, 2017 4:34 PM
To: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS ██████████████

Cc: Cooper, Aimee M CDR USN (US) ████████████████████████
████████ TSgt USAF OSD OMC (US) ███████████████████ ███████████
A PO1 USN (US) ██████████████████ █████████A CTR (US)█████████

Subject: FW: Visitation Request for ISN: 10026 on 26 September - 6 October 2017

1

11

Good afternoon Team,

Any updates on the request below?  Thanks in advance.

Very Respectfully,

████████████████
Paralegal NCO
Military Commissions Defense Organization
████████████
████████████
██████████████████████████
████████████████████████

-----Original Message-----
From: ████████████SGT OSD OMC Defense
Sent: Thursday, September 07, 2017 1:39 PM
To: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
Cc: Cooper, Aimee M CDR OSD OMC Defense; ████████████TSgt OSD OMC DEFENSE; ████████████
PO1 USN (US)
Subject: Visitation Request for ISN: 10026 on 26 September - 6 October 2017

Litigation Support Team,

Good afternoon.

I would like to request support and approval for client visitation with ISN:  10026 on 26 September 2017 - 6
October 2017.

ISN: 10026 defense team would like to conduct client visits in preparation for hearings.  The hearings dates are
from 2-6 October 2017.

ISN: 10026 Defense team would like to conduct client visits in the event that the scheduled hearing doesn't go as
plan.

Please let me know if you can accommodate this request.

Thank you in advance for your assistance and support in this matter.

Very Respectfully,

████████████
SGT, U.S. Army
Paralegal NCO
Military Commissions Defense Organization
1620 Defense Pentagon
Washington, DC  20301
████████████

2

12



CLASSIFICATION: UNCLASSIFIED

# ATTACHMENT D

**From:** <u>Cooper, Aimee M CDR OSD OMC Defense</u>
**To:** █████
**Subject:** Fwd: ISN 10026 (UNCLASSIFIED)
**Date:** Friday, September 8, 2017 4:50:45 PM

████████

████████

Begin forwarded message:

> **From:** SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
> ████████
> **Date:** September 8, 2017 at 4:48:41 PM EDT
> **To:** "Cooper, Aimee M CDR OSD OMC Defense" ████████,
> SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
> ████████, SOUTHCOM NS Guantanamo
> Bay JTF GTMO SJA Mailbox LSS ████████
> ████████>, SOUTHCOM NS Guantanamo Bay JTF GTMO SJA
> Mailbox LSS ████████
> **Cc:** 'Adam Thurschwell' ████████, "Fischer, Jeffrey A CAPT
> OSD OMC Defense" ████████, "Schwartz, Michael A CIV
> OMC DEFENSE" ████████, '████████ CTR (US)"
> **Subject: RE: ISN 10026 (UNCLASSIFIED)**

CLASSIFICATION: UNCLASSIFIED

CDR Cooper,

You are welcome to submit a special request form to this mailbox to request arrangement of an expedited phone call with your client. Upon receipt, JTF-GTMO SJA will review that request and we will respond in a timely manner. Be advised, due to weather, no detainee calls are currently authorized and the earliest they will be authorized, subject to change based on the latest weather projections, is early next week.

You are also welcome to communicate with your client through the normal mail process. Any correspondence you submit will be couriered in the normal course to your client as weather conditions allow. Similarly, if your client generates any mail, JTF-GTMO SJA will process that out-going mail in the normal course.

V/r,
LSS

-----Original Message-----
From: Cooper, Aimee M CDR OSD OMC Defense
████████

15

Sent: Friday, September 08, 2017 2:49 PM
To: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
███████████████████████████████ SOUTHCOM NS Guantanamo
Bay JTF GTMO SJA Mailbox LSS ████████████████████
████████████ >; SOUTHCOM NS Guantanamo Bay JTF GTMO SJA
Mailbox LSS ██████████████████████████████████████
Cc: 'Adam Thurschwell' ██████████████████; Fischer, Jeffrey A CAPT
USN (US) ██████████████████; Schwartz, Michael A CIV WHS (US)
███████████████████████CTR (US) ███████████████
Subject: RE: ISN 10026 (UNCLASSIFIED)
Importance: High

This is not responsive.  Four days after our client was apparently operated on by
your personnel -- although we have not even been informed of that most basic fact
through your "proper channel" -- you have provided us with no information about
our client's condition in the wake of emergency surgery that could and should
have been performed months ago, and that we are informed by medical experts
could have left him with permanent nerve damage.  We repeat -- your obstruction
is materially interfering with our ability to represent our client and damaging our
attorney-client relationship.

Notwithstanding that reality, and taking you at your word that your job is to
"facilitate attorney-client communication through coordinating meetings and
phone calls and mail delivery in support of litigation," please do the following:

(1)  Please arrange a phone call at the earliest possible time between our client,
myself and other counsel.  One or more of us will make ourselves available this
afternoon and/or this evening (or over the weekend if necessary).

(2)  Inform Mr. al-Tamir, on our behalf, that if he is capable of writing us an
account of his current medical condition, including any continuing paralysis or
other symptoms, we ask him to do so.  Please show him this email to confirm that
this request is coming from us.

(3)  If he is physically capable of writing a response to this request, please
facilitate our attorney-client communication by treating his letter as legal mail and
communicating it to Ms. Julie Kegler for transmission to our office.

(4)  If he is not physically capable of writing a response, please have Julie Kegler
transcribe his response and email it to us as soon as possible.  Inform him that we
advise him that if he is unable to write a letter for himself, he should limit his
response to his medical condition, with as much as detail as he can supply, and
that we further advise him to waive his attorney-client privilege for the limited
purpose of assuring that this information is communicated to us at the earliest
possible time.

Please confirm that you are following through on these requests to facilitate our
attorney-client communications, and let us know how the telephone call is to be
arranged.

16

R/ CDR Cooper

Aimee Cooper
CDR, JAGC, USN
Military Commissions Defense Organization
███████████████████

Caution: This communication may be privileged as attorney work product and/or
attorney-client communication or may be protected by another privilege
recognized under the law. Do not distribute, forward, or release without the prior
approval of the sender or Military Commissions Defense Organization, Office of
the Chief Defense Counsel. In addition, this communication may contain
individually identifiable information the disclosure of which, to any person or
agency not entitled to receive it, is or may be prohibited by the Privacy Act, 5
U.S.C. §552a. Improper disclosure of protected information could result in civil
action or criminal prosecution.

-----Original Message-----
From: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
████████████████████
Sent: Friday, September 08, 2017 2:07 PM
To: Cooper, Aimee M CDR OSD OMC Defense; SOUTHCOM NS Guantanamo
Bay JTF GTMO SJA Mailbox LSS; SOUTHCOM NS Guantanamo Bay JTF
GTMO SJA Mailbox LSS
Cc: 'Adam Thurschwell'; Fischer, Jeffrey A CAPT OSD OMC Defense;
Schwartz, Michael A CIV OMC DEFENSE
Subject: RE: ISN 10026 (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

CDR Cooper,

JTF-GTMO SJA advises the JTF Commander on all legal matters related to the
JTF mission to support litigation including the litigation occurring in the Military
Commissions. The JTF-GTMO SJA also advises the JTF Commander on all legal
matters related to the JTF mission to provide safe and humane treatment for all
detainees, including your client. For routine information, as you are already
aware, JTF-GTMO SJA supports all the regularly recurring discovery
requirements for Commissions litigation by, among other things, coordinating the
copying and dissemination of medical records, etc. Regarding proper channels
for disseminating relevant emergent information to parties in litigation, JTF-
GTMO SJA will continue to work through and with its chain of command to
provide information to the Combatant Commander (in this case Commander
SOUTHCOM) to decide what information is reasonably required for litigation
and how/when to disseminate that information to the Office of Military
Commissions (OMC).

JTF-GTMO SJA, as you are also aware, facilitates attorney-client communication through coordinating meetings and phone calls and mail delivery in support of litigation. You remain able to interact with, and request meetings with, your client through those channels. Your client is also able to, and has, granted consent for release of his medical records to you as his legal counsel. That consent for release of medical records and information does not equate however, to obligating direct communication between defense counsel and the JTF medical personnel documenting care within those records. This is to say, Commander JTF-GTMO declines to authorize direct discussions with JTF personnel despite your client's consent for such communications. JTF-GTMO SJA is currently collecting the August medical records, including the most recent records, and prepping those records for distribution via the normal process.

Finally, JTF-GTMO in Guantanamo Bay, Cuba, and SOUTHCOM headquarters in Miami, Florida, are currently experiencing weather conditions that may impact timelines for coordination and communication.

V/r,
LSS

-----Original Message-----
From: Cooper, Aimee M CDR OSD OMC Defense

Sent: Friday, September 08, 2017 10:39 AM
To: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
SOUTHCOM NS Guantanamo
Bay JTF GTMO SJA Mailbox LSS
s
Cc: 'Adam Thurschwell'                          ; Fischer, Jeffrey A CAPT
USN (US                              Schwartz, Michael A CIV WHS (US)
Subject: FW: ISN 10026 (UNCLASSIFIED)
Importance: High

The Miami Herald reports that Mr. al-Tamir has been operated on: " The medical facility at Guantánamo Bay notified higher headquarters on Sunday that a detainee needed urgent medical care within 24 to 48 hours. The surgery took place early Tuesday, and doctors were still at the base Thursday monitoring the man's recovery as Irma approached."

Read more here: http://www.miamiherald.com/news/nation-world/world/americas/guantanamo/article171882522.html#storylink=cpy

Yet, even though I have made repeated requests for information relating to my clients medical condition, his surgery and current status, the defense team has been ignored. I was told in the below email chain that I will be made through "proper channels as appropriate." At this point it appears the proper channel is the Miami Herald. It is curious why government officials are speaking to news media and yet a uniformed counsel who has been designated lead counsel by Mr. al-Tamir cannot get a response. Mr. al-Tamir told me that the doctor was ready to

18

communicate with me regarding his medical condition. He has given the doctor permission to communicate with me and has asked me to communicate with the doctor. My understanding is that these efforts were to be coordinated through the SJA. I have yet to speak to the doctor and not for my lack of asking.

I want a response to the following today. If you are unable to provide the requested information by 1330 today, please tell us all the information you have been able to obtain at that time and when the rest can be expected. If you cannot provide a response, please let me know the proper channels the media used perhaps they can be of help.

1.    What is Mr. al-Tamir's current medical condition/status?

2.    What medical tests and procedures to include surgeries has Mr. al-Tamir undergone since being admitted to the hospital on 3 September 2017.

3.    When were the above medical tests and procedures to include surgeries performed?

4.    What is the expected outcome of the medical procedures to include surgeries performed?

5.    A list of all medications that Mr. al-Tamir has been prescribed.

6.    All medical records associated with all medical tests, procedures to include surgeries since 3 September 2017

7.    Any notification regarding Mr. al-Tamir's health that have been shared with Government counsel of record or the Commission.

Again, I reiterate my previous request to be updated daily - morning, mid-afternoon and end of day AND whenever his medical condition changes. A change in his medical condition includes an upgrade in his condition or any decline his health - however slight the decline is.

V/r  CDR Cooper

Aimee Cooper
CDR, JAGC,
Military Commissions Defense Organization
██████████████████████

Caution: This communication may be privileged as attorney work product and/or attorney-client communication or may be protected by another privilege recognized under the law. Do not distribute, forward, or release without the prior approval of the sender or Military Commissions Defense Organization, Office of the Chief Defense Counsel. In addition, this communication may contain individually identifiable information the disclosure of which, to any person or agency not entitled to receive it, is or may be prohibited by the Privacy Act, 5

U.S.C. §552a. Improper disclosure of protected information could result in civil action or criminal prosecution.


-----Original Message-----
From: Cooper, Aimee M CDR OSD OMC Defense
Sent: Thursday, September 07, 2017 11:56 AM
To: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS;
SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
Cc: Thurschwell, Adam Mr OSD OMC Defense; ███████ CTR (US);
Fischer, Jeffrey A CAPT OSD OMC Defense; Schwartz, Michael A CIV OMC
DEFENSE
Subject: RE: ISN 10026 (UNCLASSIFIED)
Importance: High

Good Morning,


I am glad to hear that JTF is engaged in Mr. al-Tamir's medical condition and treatment.  The issue here is that his defense team is not engaged only because JTF refuses to provide updates.  Thus far the only medical updates I have are from my client.  I would not have even known he was hospitalized if he had not told me.  I am under the belief that Mr. al-Tamir has undergone medical treatment within the past 48 hours that leaves him incapable of communicating with me.  Mr. al-Tamir told me that the doctor was ready to communicate with me regarding his medical condition.  He has given the doctor permission to communicate with me and has asked me to communicate with the doctor.  My understanding is that these efforts were to be coordinated through the SJA.  Instead, we have been unable to receive any information from or about our client at all.  In these circumstances JTF's refusal to coordinate communications between myself, the doctor or Mr. al-Tamir or provide any information whatsoever about his medical status is directly interfering with the attorney/client relationship.  Accordingly, please provide the following as soon as feasible.  If you are unable to provide the requested information by 1330 today, please tell us all the information you have been able to obtain at that time and when the rest can be expected.

1.    What is Mr. al-Tamir's current medical condition/status?

2.    What medical tests and procedures to include surgeries has Mr. al-Tamir undergone since being admitted to the hospital on 3 September 2017.

3.    When were the above medical tests and procedures to include surgeries performed?

4.    What is the expected outcome of the medical procedures to include surgeries performed?

5.    A list of all medications that Mr. al-Tamir has been prescribed.

6.   All medical records associated with all medical tests, procedures to include surgeries since 3 September 2017

7.   Any notification regarding Mr. al-Tamir's health that have been shared with Government counsel of record or the Commission.

Again, I reiterate my previous request to be updated daily - morning, mid-afternoon and end of day AND whenever his medical condition changes. A change in his medical condition includes an upgrade in his condition or any decline his health - however slight the decline is.

For clarification to your email - who are the proper channels outside the defense team? If there is someone else I should be addressing, please provide contact information ASAP.

R/CDR Cooper

Aimee Cooper
CDR, JAGC, USN
Military Commissions Defense Organization

Caution: This communication may be privileged as attorney work product and/or attorney-client communication or may be protected by another privilege recognized under the law. Do not distribute, forward, or release without the prior approval of the sender or Military Commissions Defense Organization, Office of the Chief Defense Counsel. In addition, this communication may contain individually identifiable information the disclosure of which, to any person or agency not entitled to receive it, is or may be prohibited by the Privacy Act, 5 U.S.C. §552a. Improper disclosure of protected information could result in civil action or criminal prosecution.

-----Original Message-----
From: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS

Sent: Wednesday, September 06, 2017 1:55 PM
To: Cooper, Aimee M CDR OSD OMC Defense; SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
Cc: Thurschwell, Adam Mr OSD OMC Defense;                    CTR (US)
Subject: RE: ISN 10026 (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

CDR Cooper,

JTF is fully engaged on all aspects of your client's medical condition and treatment. JTF is also tracking and prepared for the impending storm conditions.

21

Updates on both will be made through proper channels as appropriate.

V/r,
LSS

-----Original Message-----
From: Cooper, Aimee M CDR OSD OMC Defense
███████████
Sent: Wednesday, September 06, 2017 12:43 PM
To: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
███████████
Cc: Thurschwell, Adam M CIV (US)████████           ; █████████
A CTR (US)███████████
Subject: ISN 10026

Good Afternoon,

I have received word that Mr. al-Tamir's doctor was ready to speak with me to
coordinate efforts relating to Mr. al-Tamir's health care.  This was supposed to
have happened on September 5, 2017.  As I type this I have not received a
response regarding Mr. al-Tamir's health care, my request for his medical records
or a call from his physician.

As I understand it, my call with the physician was/is going to be coordinated with
your offices.

Can you please provide an update.  Mr. al-Tamir's situation is emergent.

R/ CDR Cooper

Aimee Cooper
CDR, JAGC, USN
Military Commissions Defense Organization
███████████

Caution:  This communication may be privileged as attorney work product and/or
attorney-client communication or may be protected by another privilege
recognized under the law. Do not distribute, forward, or release without the prior
approval of the sender or Military Commissions Defense Organization, Office of
the Chief Defense Counsel. In addition, this communication may contain
individually identifiable information the disclosure of which, to any person or
agency not entitled to receive it, is or may be prohibited by the Privacy Act, 5
U.S.C. §552a. Improper disclosure of protected information could result in civil
action or criminal prosecution.

CLASSIFICATION: UNCLASSIFIED

CLASSIFICATION: UNCLASSIFIED

CLASSIFICATION: UNCLASSIFIED

# ATTACHMENT E

| | |
|---|---|
| **From:** | SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS |
| **To:** | ; SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS |
| **Cc:** | Cooper, Aimee M CDR OSD OMC Defense; |
| **Subject:** | RE: Emergency Special Request - Client Phone Call (UNCLASSIFIED) |
| **Date:** | Thursday, September 14, 2017 10:49:49 AM |

CLASSIFICATION: UNCLASSIFIED

CDR Cooper,

Your JTF-GTMO Commissions Attorney Request Form, Subject: "Emergency Special Request - Phone Call" dated 11 September 2017 regarding an expedited phone call was received and is hereby DENIED.

V/r,
LSS

-----Original Message-----
From:      TSgt OSD OMC DEFENSE
Sent: Monday, September 11, 2017 9:42 AM
To: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS
Cc: Cooper, Aimee M CDR USN (US)

Subject: Emergency Special Request - Client Phone Call (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

Good morning,

Please see the attached Emergency Special Request. Please let me know if you have any questions or concerns, and if you are able to accommodate this request. Thank you in advance.


V/r,

Technical Sergeant, U.S. Air Force
Defense Paralegal
Military Commissions Defense Organization


CLASSIFICATION: UNCLASSIFIED


CLASSIFICATION: UNCLASSIFIED


25

# ATTACHMENT F

| From: | SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS |
|---|---|
| To: | OSD OMC DEFENSE; SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS; SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS |
| Cc: | Cooper, Aimee M CDR OSD OMC Defense |
| Subject: | RE: Emergency Special Request (UNCLASSIFIED) |
| Date: | Thursday, September 14, 2017 10:50:05 AM |

CLASSIFICATION: UNCLASSIFIED

CDR Cooper,

Your JTF-GTMO Commissions Attorney Request Form, Subject: "Emergency Special Request" dated 13 September 2017 regarding a request for attorney-client meetings was received and is hereby DENIED. Additional information regarding this denial will be provided via the Office of Military Commissions.

V/r,
LSS

-----Original Message-----
From: _____ TSgt OSD OMC DEFENSE _____
Sent: Wednesday, September 13, 2017 9:54 AM
To: SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS _____
_____ SOUTHCOM NS Guantanamo Bay JTF GTMO SJA Mailbox LSS _____
Cc: Cooper, Aimee M CDR USN (US) _____
Subject: Emergency Special Request (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

Good Morning,

Please see the attached Emergency Special Request for Attorney Meetings at Camp Hospital. Please let me know if you have any questions or concerns and if you can accommodate this request. Thank you in advance.

V/r,


Technical Sergeant, U.S. Air Force
Defense Paralegal
Military Commissions Defense Organization

CLASSIFICATION: UNCLASSIFIED

CLASSIFICATION: UNCLASSIFIED

27

# Exhibit I



OFFICE OF THE SECRETARY OF DEFENSE
OFFICE OF MILITARY COMMISSIONS
4800 MARK CENTER DRIVE
ALEXANDRIA, VA 22350-2100

SEP 18 2017

MEMORANDUM FOR COMMANDER AIMEE COOPER, MILITARY DEFENSE
COUNSEL

SUBJECT: Defense Request for Expert Assistance – Neurological Surgery - *U.S. v. Hadi al Iraqi*

I have carefully reviewed your request, which is dated September 1, 2017, for the appointment and funding of Dr. James C. Cobey, MD, MPH, as an expert consultant in the field of orthopedic surgery to assist in the defense of Mr. Hadi by assessing whether he can participate in his defense and his fitness to stand trial. For the reasons set forth below, I must deny your request.

Rule for Military Commission (R.M.C.) 703(d) establishes the procedure for requesting expert assistance and requires each party to provide the opposing party notice of such requests. You provided notice of the instant request to the prosecution on September 1, 2017.

An accused is entitled to the employment of an expert, provided that he or she can demonstrate the necessity for the expert assistance. *See Ake v. Oklahoma*, 470 U.S. 68 (1985). As the *Ake* Court explained, an indigent defendant is entitled to access "the raw materials integral to the building of an effective defense." *Id.* at 77. The Court noted that an indigent defendant is not constitutionally entitled to "all the assistance that his wealthier counterpart might buy," but that "fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversary system." *Id.* Military courts have embraced this rule in a series of opinions spanning decades. *See United States v. Garries*, 22 M.J. 288, 291 (C.M.A. 1986); *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010); *United States v. Freeman*, 65 M.J. 451, 458 (C.A.A.F. 2008); *United States v. Bresnahan*, 62 M.J. 137, 143 (C.A.A.F. 2005); *United States v. Gonzalez*, 39 M.J. 459, 461 (C.M.A. 1994); *United States v. Robinson*, 39 M.J. 88, 89 (C.M.A. 1994); *United States v. Cannon*, 74 M.J. 746, 750 (A.C.C.A. 2015) ("If the defense demonstrates that expert assistance is relevant and necessary, than an expert shall be employed at government expense to assist the defense.").

To demonstrate necessity, an accused must show something more than a mere possibility of assistance from a requested expert. An accused must show that there exists a reasonable probability both that the expert would be of assistance to the defense and that denial of the expert assistance would result in a fundamentally unfair trial. *See United States v. Gunkle*, 55 M.J. 26, 31 (C.A.A.F. 2001); *Robinson*, 39 M.J. at 89. In demonstrating the necessity for expert assistance, the defense must show: (1) why the expert assistance is needed; (2) what the expert assistance would accomplish for the accused; and (3) why the defense counsel is unable to gather and present the evidence that the expert assistance would be able to develop. *See Gunkle*, 55 M.J. at 32; *Gonzalez*, 39 M.J. at 461.

I find that you have not made the requisite showing of necessity for the appointment of this expert at this time.  Your request indicates that the appointment of Dr. Cobey is necessary because Mr. Hadi's medical condition prohibits him from participating in his defense and because, you assert, JTF-GTMO has demonstrated itself incapable of treating his condition.  It is my understanding, however, that on September 4, 2017, a Navy neurosurgical team performed surgery on Mr. Hadi to address the medical issues you discuss in your request.  My office has been informed that further surgery is planned for the week of September 18, 2017.  The detention facility is responsible for providing any necessary medical care for detainees and for determining an appropriate course of treatment for their symptoms.  In light of the ongoing medical treatment being afforded Mr. Hadi, I cannot find that you have sufficiently demonstrated that Dr. Cobey's assistance is required.

For the foregoing reasons, your request for the appointment and funding of Dr. Cobey as an expert consultant in the field of orthopedic surgery is denied.  If you file a motion to compel, please ensure that this response is included with any pleadings that you file with the commission.

Harvey Rishikof
Convening Authority
  for Military Commissions

cc: Trial Counsel

2

# Exhibit J



GUANTÁNAMO

# Alleged al-Qaida commander needs more spine surgery; next Guantánamo hearing in doubt

BY CAROL ROSENBERG
crosenberg@miamiherald.com

SEPTEMBER 15, 2017 3:52 PM

Alleged al-Qaida commander needs more spine surgery | Miami Herald | Guantánamo drawing into doubt | Miami Herald   Page 2 of 7

A high-value detainee at Guantánamo needs a second spinal cord surgery, this one on his neck, a medical procedure that his lawyers say will likely mean cancellation of next month's war court hearing in the case of an Iraqi man accused of commanding the al-Qaida army in Afghanistan after the Sept. 11 attacks.

Pentagon-paid lawyers for Abd al Hadi al Iraqi, 56, said they got notice Thursday night that the man who calls himself Nashwan al Tamir will undergo neck surgery next week, Sept. 19 or 20. They were told he would be unable to see anyone on his legal defense team for four to six weeks following surgery. His next war court hearing is scheduled for Oct. 2-6.



**SOCIAL SECURITY STINKS**

**Born before 1969?**
**You can get an extra $2,194**
**monthly with this...**

Palm Beach Research Group          **LEARN MORE >>**

Earlier this month, as Hurricane Irma was headed Guantánamo's way, the captive became incontinent, and the war-on-terror prison scrambled a special neurosurgery team to the base in southeast Cuba to conduct emergency surgery on Hadi's lower back — a procedure that, according to doctors consulted by defense attorneys, was clearly necessary months ago based on a January CT scan.

Guantánamo's 41 war-on-terror captives are forbidden by law from being brought to the United States for any reason. So the small base hospital has to import medical expertise rather than med-evac captives for complex treatment as it does for any other resident on the base of about 5,500 people.

### Hurricane Alerts and Breaking News

Get the latest alerts by email

Enter Email Address

READ MORE: Doctors beat Irma to Guantánamo to operate on alleged war criminal's spine



Guantánamo prisoner Abd al Hadi al Iraqi, who says his true name is Nashwan al Tamir, poses for the International Committee of the Red Cross in a 2014 photo taken for his family, and provided by his attorneys.

Hadi's attorneys describe next week's surgery as an emergency operation; a letter he wrote them this week said he was advised, absent some urgency, that he would require 6 to 12 weeks of recovery from the lower back operation before the neck surgery. His lawyer, Navy Cmdr. Aimee Cooper, said she was notified Thursday evening that he would be unable to speak with his legal team for weeks — in person or by phone — because neck surgery had been scheduled.

Hadi was formally charged with war crimes in June 2014. The case is still in pretrial hearings as prosecutors continue to disclose some evidence to his lawyers, who are contesting the legality of some aspects of the war court created by George W. Bush. Hadi, who fled service in Saddam Hussein's Iraqi Army in the 1990s, is accused of directing and paying insurgents to carry out attacks on U.S. and allied troops and civilians during the post- 9/11 invasion of Afghanistan to hunt down Osama bin Laden and dismantle the Taliban.

**GUIDE: About the war crimes trial of the alleged al-Qaida commander**

No trial date has been set. His judge, Marine Col. Peter Rubin, has asked for an update on Hadi's health condition by Sept. 21, and set a light agenda for the October session — four discovery motions, an expert request and Hadi's lawyers' request to suspend all proceedings, according to Cooper, "until he's competent and healthy to stand trial."

"He obviously can't prepare," she said, "if he can't meet with his lawyers."

Cooper said the first surgery had left a numbness in his left side, and he wrote his lawyers Sept. 11 that he was able to only walk a few feet, "with the assistance of others, holding him up." His lawyers said he also related that, sometime before the hurricane swept past, Hadi was moved from the remote U.S. Navy base's community hospital back into the Detention Center Zone and kept at a small prison clinic.

At the Pentagon, spokesman Air Force Maj. Ben Sakrisson said, as of Friday, the hearing was still on the war court calendar for next month. "Any requests for delay, medical or otherwise, would only come after an appropriate motion has been filed and ruled on by the military judge," he said by email.





Guantánamo Navy base hospital on Oct. 13, 2016. **CAROL ROSENBERG** -
crosenberg@miamiherald.com

### Never miss a local story.

Sign up today for a free 30 day free trial of unlimited digital access.

SUBSCRIBE NOW

# IN OTHER NEWS

Trump promises to eradicate terrorism after 'vicious' London attack…

💬 **COMMENTS** ⌄

## SUBSCRIPTIONS

Start a Subscription

Customer Service

eEdition

Vacation Hold

Pay Your Bill

Rewards

## SITE INFORMATION

About Us

Contact Us

Newsletters

News in Education

Public Insight Network

Reader Panel

## SOCIAL, MOBILE & MORE

Text News Alerts

Mobile & Apps

Facebook

Twitter

Google+

Alleged al-Qaida commander needs more spine surgery; next Guantánamo hearing in doubt | Miami Herald

Newsletters

**ADVERTISING**

Place a Classified

Media Kit

Commercial Printing

Public Notices

Shopping

**MORE**

Copyright

Commenting Policy

Privacy Policy

Terms of Service