```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
_____
                                    )
NASHWAN AL-RAMER ABDULRAZZAQ         )
                                    )
            Plaintiff,              )
                                    )
       v.                           ) Civil Action No. 17-1928 (EGS)
                                    )
DONALD J. TRUMP, et al.,            )
                                    )
            Defendants.             )
_____)
```

## MEMORANDUM OPINION

Petitioner Nashwan Al-Ramer Abdulrazzaq, a male Iraqi citizen detained at a prison facility in Guantanamo Bay, Cuba ("Guantanamo"), is awaiting trial before a military commission on non-capital charges of Denying Quarter, Attacking Protected Property, Using Treachery or Perfidity, Attempted Use of Treachery or Perfidity, and Conspiracy to Violate the Laws of War. Mot. to Dismiss Pet'r's Second Am. Pet. for a Writ of Habeas Corpus ("Mot. to Dismiss"), ECF No. 47 at 17.[1]

On November 29, 2017, Petitioner filed a Second Amended Petition for a Writ of Habeas Corpus, raising four claims: (1) the conditions of his confinement at Guantanamo violate the Eighth Amendment; (2) the structure of the military commissions

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

process violates the Due Process Clause of the Fifth Amendment ("conflict-of-interest" claim); (3) discrimination against him by reason of his nationality in violation of the equal protection guarantees in the Fifth Amendment ("equal protection" claim); and (4) violation of his right to counsel guaranteed by the Sixth Amendment and the Military Commissions Act ("MCA") ("interference-with-counsel-communications" claim). Pet'r's Opp'n to Resp'ts' Mot. to Dismiss Pet'r's Second Am. Pet. for a Writ of Habeas Corpus, ECF No. 59 at 6-7.

Pending before the Court is Petitioner's motion to lift stay of proceedings and for preliminary injunction. Pet'r's Mot. to Lift Stay of Proceedings and for Prelim. Inj. ("MPI"), ECF No. 147.[2] In view of the Court's forthcoming memorandum opinion ruling on Respondent's motion to dismiss, the Court **HOLDS IN ABEYANCE** Petitioner's motion to lift the stay. With regard to his motion for preliminary injunction, Petitioner requests that the Court preliminarily enjoin further proceedings in the military commission pending this Court's determination that he is medically competent to stand trial. *Id.* at 1. Upon careful consideration of the motion, the response, the reply thereto,

---

[2] On August 26, 2019, Petitioner withdrew his Motion for Temporary Restraining Order referenced in his Motion for Preliminary Injunction. Notice of Classified Filing, ECF No. 151.

the applicable law, and for the reasons explained below, the Court **DENIES** Petitioner's motion for preliminary injunction.

**I. Background**

    **A. Petitioner's Military Commission Proceedings and Medical Condition**

On June 2, 2014, the Convening Authority[3] referred the charges against Petitioner to a military commission for trial, Mot. to Dismiss, ECF No. 47 at 17, and pretrial proceedings have been ongoing since that time, Resp't Opp'n to Pet'r's Mot. to Lift Stay and for Prelim. Injunction ("Opp'n"), ECF No. 149 at 6. Petitioner's trial is scheduled to begin September 19, 2020. *Id*. at 7.

Petitioner has been diagnosed "with stenosis of both his lumbar and cervical spine, a degenerative condition," Mot. to Dismiss, ECF No. 47 at 20, and has undergone five surgeries during his detention, MPI, ECF No. 147 at 8. Petitioner states that "he remains disabled, in constant pain, and heavily medicated with tranquilizers and painkillers to alleviate his symptoms." *Id*. at 4. Petitioner has sought the relief he seeks before this Court–a medical competency hearing–more than once before the military judge, but those requests have been denied. *Id*. at 8. Petitioner is also dissatisfied with the military

---

[3] The Convening Authority is the Defense Department official who refers a case to trial. *In re Al-Nashiri*, 835 F.3d 110, 112 (D.C. Cir. 2016).

judge's denial of his requests to present his own evidence regarding his medical condition to counter that of the Guantanamo medical officers. *Id*.

The impetus for the motion before the Court is Petitioner's dissatisfaction with the military judge's response to his medical condition during a military commission hearing session on August 21, 2019. *Id*. at 4-5.[4] After approximately two hours of the session, "Petitioner informed his defense counsel that he was 'in tremendous pain and cannot focus on what is being said in court.'" *Id.* at 4 (quoting Tr., ECF No. 147-1 at 74). The Court recessed for two hours, but Petitioner did not return to court, choosing instead to "follow the proceedings on a closed-circuit video/audio feed" from the jumbo cell,[5] accompanied by one of his counsel." *Id.* Petitioner states that on "August 22, 2019, the military judge stated his intention to determine whether Petitioner's absence from the hearing yesterday (August 21) was voluntary, or based on medical incapacity, solely on the basis of witnesses and evidence adduced by the government." *Id*. at 5. When Petitioner did not appear for the August 22, 2019

---

[4] Petitioner contends that three motions currently pending before the military commission are relevant to the instant motion. MPI, ECF No. 147 at 7. These motions appear to concern potential conflicts of interest on the part of a military judge and law clerk and disqualification of the convening authority.
[5] The jumbo cell is a facility that was constructed for Petitioner's use "to ensure [that he] can attend and participate in commission proceedings." Tr., ECF No. 147-1 at 174.

4

afternoon session, the military judge canceled testimony on substantive matters after hearing representations from Petitioner's counsel that Petitioner was involuntarily absent as a result of his medical condition. Opp'n, ECF No. 149 at 11.

## II. Analysis

### A. Jurisdiction

As a preliminary matter, the parties disagree as to whether this Court has jurisdiction to consider this request. Petitioner argues that it does because the "gravamen" of his motion – "the agony he regularly and predictably experiences when compelled to attend hearings" is a condition of his confinement, which is within the scope of habeas. Reply, ECF No. 152 at 3. Respondent argues that the Court lacks jurisdiction to consider Petitioner's request for injunctive relief pursuant to 28 U.S.C. § 2241(e)(2) and/or 10 U.S.C. § 950g because his request for this Court "to stop his military commission does not go to any aspect of his confinement or its lawfulness . . . [but] concerns only an aspect of his trial." Opp'n, ECF No. 149 at 17. Because the Court concludes that the abstention principles set forth in *In re Al-Nashiri* are fatal to Petitioner's ability to succeed on the merits for the relief he seeks, the Court does not reach whether it has subject matter jurisdiction to consider the request. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to

choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999))); see also *In re Al-Nishiri*, 835 F.3d 110, 117 n.1 (D.C. Cir. 2016) ("We need not weigh in on whether the district court had subject matter jurisdiction to adjudicate Al-Nashiri's motion for preliminary injunctive relief. Although the government suggests in its briefing before us that Al-Nashiri's claim does not sound in habeas—a claim that calls into question the district court's statutory jurisdiction, *see* 28 U.S.C. § 2241(e)(2)—we affirm the denial of that motion for reasons we explain below. Because the motion was properly denied on threshold grounds, we need not consider the district court's subject matter jurisdiction any further.") (citations omitted)).

**B. Standard of Review**

"'A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Aamer v. Obama*, 742 F.3d 1023, 1039 (D.C. Cir. 2014) (quoting *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011) (alteration in original) (quoting *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008)). "The purpose of a preliminary injunction is merely to preserve the relative

positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). It is "an extraordinary and drastic remedy" and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted). In this Circuit, the four factors have typically been evaluated on a "sliding scale," such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).

In the wake of the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), "the D.C. Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." *Holmes v. FEC*, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014); *see also Sherley*, 644 F.3d at 393 ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.") (quotation marks omitted). Nonetheless, "the Circuit has had no occasion to decide this question because it has not yet encountered a post-*Winter* case where a preliminary injunction motion survived the less rigorous sliding-scale analysis." *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014). However, "when a plaintiff

7

has not shown a likelihood of success on the merits, we need not consider the other factors [required for a preliminary injunction]." *Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1088 (D.C. Cir. 2011).

**1. Success on the Merits**

"[T]he first and most important factor is whether petitioners have established a likelihood of success on the merits." *Aamer*, 742 F.3d at 1038. Whether Petitioner can succeed on the merits depends on whether this Court should abstain in favor of ongoing military commission proceedings pursuant to *In re Al-Nashiri*, 835 F.3d. 110 (D.C. Cir. 2016). In that case, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") held that "the system enacted to adjudicate [Guantanamo detainees'] guilt . . . adequately protect[s] [their] rights" and consequently, "judicial review should not take place before that system has completed its work" subject to limited exceptions. *In re Al-Nashiri*, 835 F.3d at 122, 124. Here, the parties dispute whether the relief Petitioner seeks falls within one of the limited exceptions.

Petitioner argues that because the pretrial procedures cause Petitioner "agonizing pain and violate his rights to bodily integrity and personal security without due process of law," this situation falls within an exception. Reply, ECF No. 152 at 2-3. He does not dispute that the relief he seeks does

8

not fall within any of the narrow exceptions to abstention recognized in *In re Al-Nashiri*, but argues that "it qualifies as an exception nonetheless," citing two Supreme Court cases. Reply, ECF No. 152 at 9.

In *Sell v. United States*, 539 U.S. 166 (2003), the Supreme Court considered whether the state Court of Appeals had jurisdiction to consider an appeal of a pretrial order, and consequently whether the Supreme Court itself had jurisdiction to decide the question presented. In *Sell*, the appeal was of a pretrial order requiring Mr. Sell to involuntarily receive medication. *Sell*, 539 U.S. at 175. As to the appellate jurisdiction, the Supreme Court stated that the pretrial order fell within the "collateral order" exception to 28 U.S.C. § 1291, which authorizes appellate review of only final decisions of district courts. *Id*. at 176. The Court reasoned that "[t]he order (1) 'conclusively determine[s] the disputed question,' namely, whether Sell has a legal right to avoid forced medication. *Ibid.* The order also (2) 'resolve[s] an important issue,' for, as this Court's cases make clear, involuntary medical treatment raises questions of clear constitutional importance." *Id.* The Court also observed that "the basic issue—whether Sell must undergo medication against his will—is "completely separate from the merits of the action," *i.e.,* whether Sell is guilty or innocent of the crimes charged" as

9

well as "from issues concerning trial procedures." *Id*. The Court concluded that "the issue is (3) 'effectively unreviewable on appeal from a final judgment.' *Ibid.* By the time of trial Sell will have undergone forced medication—the very harm that he seeks to avoid. He cannot undo that harm even if he is acquitted. Indeed, if he is acquitted, there will be no appeal through which he might obtain review." *Id*. at 176-77. Petitioner argues that similar to *Sell*, whether he is medically competent to stand trial is "an important issue" that is "completely separate" from his innocence or guilt. Reply, ECF No. 152 at 11. Furthermore, "by the time of trial . . . [he] will have undergone . . . the very harm he seeks to avoid," specifically "the arbitrary and wonton [sic] imposition of pain amounting to pretrial punishment." *Id*.

In *Winston v. Lee*, 470 U.S. 753 (1985), the Supreme Court considered whether "a State may consistently with the Fourth Amendment compel a suspect to undergo [a specific type of] surgery . . . in a search for evidence of a crime," specifically, "an object thought to be a bullet lodged under [Petitioner's] left collarbone." *Winston*, 470 U.S. at 757. Petitioner, through a habeas action, sought to enjoin the State from compelling him to undergo the surgery. *Id*. at 758. Based on the particular surgical procedure that would be required, the Court held "that the proposed search in this case would be

'unreasonable' under the Fourth Amendment. *Id*. at 766. Petitioner relies on *Winston* and *Sell* to "establish first, that Respondent's list of appealable pretrial issues is not exclusive, and second that the issue presented here—whether Petitioner is suffering pretrial punishment—falls squarely within their rationale." Reply, ECF No. 152 at 12.

Petitioner's reliance on Sell is misplaced for at least two reasons. First, unlike in *Sell*, here there is no district court pretrial order of which Petitioner seeks interlocutory appeal. Second, while Petitioner argues that abstention is inappropriate because otherwise he would be tried while being medically incompetent, his medical condition is clearly "attendant" to the resolution of the military commission proceeding because if the military judge is wrong about Petitioner's medical competence, that can be remedied in the appellate process. *In re Al-Nashiri*, 835 F.3d at 129 (noting that "Al-Nashiri's harms are 'attendant to resolution of his case in the military court system' and, as a result, do not render abstention inappropriate here") (citing *Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975)). Petitioner is correct that whether he is medically competent to stand trial is "completely separate from the merits of the action," but again, this issue is reviewable on appeal. Nor does *Winston* help Petitioner as the case concerns a pretrial Fourth Amendment search, which is clearly distinguishable.

Petitioner alleges that the military judge is being "deliberately indifferent" to his medical condition. Reply, ECF No. 152 at 13. However, the transcripts of the military commission hearings Petitioner attached to his motion demonstrate that the military judge has accommodated Petitioner's medical condition with regard to the proceedings in general, and specifically during the session that was held on August 21, 2019.

Regarding accommodations made in view of Petitioner's medical condition generally, the military judge stated as follows:

> Accommodations implemented over the past year, based on complaints or requests by the accused, include those discussed extensively yesterday related to the jumbo cell. They include also taking extended recesses in the middle of the day, providing multiple transportation platforms to make [Petitioner's] movements less aggravating, alternating the days we are on the record and in the commission session, having medical personnel continuously onsite to administer medication or aid to [Petitioner], encouraging and authorizing [Petitioner] to change positions throughout the hearings, placing a hospital bed and a hospital chair in the courtroom, and beginning the sessions later in the morning to account for the time the accused would have to get up to travel to the commission and meet with his attorneys.
>
> In support of these accommodations, in addition to biweekly medical updates the commission receives on [Petitioner's] health, the commission has, on numerous occasions, received up-to-date testimony from treating

12

>           physicians, to include the neurosurgeon
>           responsible for [Petitioner's] care, to ensure
>           that they meet his medical needs.

Tr., ECF No 147-2 at 6-7. The military judge noted that Petitioner proposed a new schedule for hearing sessions because he now "indicates that he can travel on consecutive days, attend for four hours on the record at a time, and start earlier than previously requested" because "he often wakes early, takes medication, starts out feeling good, but feels progressively worse as the days go on. [Petitioner] represented, through counsel, that he has had better success when starting earlier in the day." *Id*. at 5. In response, the military judge stated that "the commission planned to begin at [8:00 a.m.] with daily sessions and, with the exception of Sunday, as best we can, limit our sessions to four hours. The schedule is going to be subject to change at any point and should not be construed or considered a long-term arrangement." *Id*. at 8-9.

The August 21, 2019 session began at 9:18 a.m. Tr., ECF No. 147-1 at 1. The court took a recess from 10:24 a.m. until 10:37 a.m. in response to Petitioner's request. *Id.* at 49. The court took a second recess from 11:09 a.m. until 11:42 a.m. in response to Petitioner's request. *Id*. at 73. Following that recess, Petitioner's counsel informed the court that Petitioner's physical health was "rapidly deteriorating" and that he was "in tremendous pain." *Id*. at 74. Counsel stated that

13

the pain medication Petitioner had taken—Valium and Percocet—had worn off and requested an additional dose of Valium and three hours of sleep before continuing the session. *Id*. at 75. Counsel also stated that Petitioner's "state of mind is completely altered based on the medication he's been taking." *Id*. In response, the military judge recessed from 11:54 a.m until 3:42 p.m.[6] *Id*. at 82. When the session reconvened, Counsel stated that Petitioner was not present "because he is in excruciating pain," experiencing muscle spasms, unable to speak due to the pain, and having difficulties maintaining conversation. *Id*. at 82-83. Petitioner met with the Senior Medical Officer ("SMO") responsible for his medical care at some point during the recess. *Id*. at 84. After recessing to ensure that Petitioner and counsel could observe and hear proceedings from the jumbo cell, albeit with a 15 to 30 second delay, the SMO was questioned by the government, Petitioner, and the military judge regarding, among other things, Petitioner's medical condition. *Id*. at 91, 100, 104-150.

This record demonstrates that the military judge was attentive and accommodating to Petitioner's medical condition on August 21, 2019. He recessed each time Petitioner requested to

---

[6] The transcript indicates that there was a brief session from 12:06 p.m. until 12:17 pm for which no public transcript is available. Tr., ECF No. 147-1 at 82.

14

do so, including a recess of more than three and a half hours so that Petitioner could sleep. He also ensured that Petitioner could observe and listen to the late afternoon session with counsel in the jumbo cell and counsel in the courtroom being reachable from the jumbo cell.

To the extent Petitioner disagrees with the military judge's denials of his requests for a medical competency determination, and to present his own evidence regarding his medical condition to counter that of the Guantanamo medical officers, he can seek appellate review within the system created by the MCA. *See In re Al-Nashiri*, 835 F.3d at 122 (noting that the review structure created in the MCA provides for (1) trial presided over by a military judge; (2) review of a conviction by the Convening Authority, who has the authority to set it aside or reduce it to a lesser-included offense; (3) review of a conviction by the Court of Military Commission Review ("CMCR"); (4) appeal of the CMCR decision to the United States Court of Appeals for the District of Columbia Circuit; and (5) the D.C. Circuit's ruling can be challenged via a petition for a writ of certiorari in the Supreme Court). Petitioner does not claim that he will be unable to seek appellate review of the military judge's decisions with which he disagrees. *See generally* MPI, ECF No. 147; Reply, ECF No. 152.

Petitioner asks this Court for extraordinary relief—to enjoin further proceedings in the military commission pending this Court's determination of Petitioner's medical competence to stand trial, and to recognize a new exception to the abstention principles set forth in *In re Al-Nashiri*. For all of the reasons discussed above, the Court declines to do so and finds that Petitioner has not established a likelihood of success on the merits.

### 2. The Remaining Factors: Irreparable Harm, the Balance of the Equities, and the Public Interest

Although Petitioner has not established a likelihood of success on the merits, the Court will briefly discuss the remaining factors. *See Aamer*, 742 F.3d at 1043-44 (briefly discussing the three remaining factors after determining that Petitioners could not establish a likelihood of success on the merits). Petitioner asserts that he "is sustaining at least three irreparable injuries: unnecessary physical pain, the right not to be tried while medically incompetent, and a continuing violation of his right not to be tried at all by military commission" and that he "has no adequate remedy at law for these injuries." MPI, ECF No. 147 at 11. Respondent argues that Petitioner has not shown that he will suffer irreparable harm that is "both certain and great." Opp'n, ECF No 149 at 31 (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir.

16

1985).

Petitioner observes that as he has no speedy trial rights under the MCA, and that "[t]he time necessary for discovery, expert examination and consultation, and a hearing will not be long in comparison to Respondents' lengthy delay in honoring any of his other rights," noting that it is in Respondents' interest for his competence to be determined prior to trial. MPI, ECF No. 147 at 11. With regard to the public interest, Petitioner argues that "no verdict against an incompetent defendant can be considered reliable" and that from an appearance of justice perspective, "the sight of the defendant writhing in agony," the multiple doses of medication he requires to attend hearings, and him sleeping on a hospital gurney during breaks, is in no one's interest. *Id.* at 11-12. Petitioner also argues that the public is entitled to know whether his medical treatment is adequate. *Id*. at 12.

Respondent argues that "the balance of harms in this matter tips decidedly against the issuance of an injunction" because enjoining the military commission proceeding would harm the Government's interest for the following reasons: (1) persons such as Petitioner charged with war crimes need to be brought to trial in a timely fashion; (2) substantial resources have been devoted to these military commission proceedings including (i) accommodating his medical condition; (ii) facilitating his

attendance at proceedings including constructing the jumbo cell; and (3) the military judge has accommodated Petitioner's scheduling requests, and provided him with in-courtroom and remote aid and equipment to facilitate his participation in the proceedings. Opp'n, ECF No. 149 at 30-31. Respondent further argues that "the public has a strong interest in seeing such individuals brought to justice as soon as possible." *Id*. at 31.

Here, the three remaining factors do not strongly favor issuing an injunction. *Sherley,* 644 F.3d at 393, 398. The Court agrees that Petitioner has an important interest in avoiding "arbitrary and wanton" physical pain, and the Court does not by any means discount Petitioner's allegations of the chronic and debilitating pain he experiences. As discussed above, however, the military judge has been responsive and accommodating to Petitioner's medical condition. The Court rejects Petitioner's assertion that he has no adequate remedy at law for the right not to be tried while medically incompetent. As discussed above, whether Petitioner was medically competent to stand trial can be raised on appeal, assuming that he is convicted of the charges against him. Petitioner has provided no argument or legal support for his final assertion that he is being harmed by "a continuing violation of his right not to be tried at all by military commission" and so the Court will disregard it. *See* Local Civil Rule 7(a).

Neither do the balance of the equities and the public interest strongly favor issuing an injunction. The government and the public have a strong interest in bringing Petitioner to trial in as timely a manner as possible. Petitioner's trial date has been set and pretrial proceedings are being scheduled in advance of that date. Petitioner may be correct that the time necessary to conduct a medical competency hearing would not cause a lengthy delay, but that consideration does not tip the balance in his favor. Petitioner has been accommodated in a number of ways by the military judge including, but not limited to, the building of the jumbo cell, the provision of specialized equipment, and acceding to Petitioner's preferred schedule of holding sessions in the morning rather than in the afternoon on consecutive days. The Court agrees with Petitioner that the public has an interest in ensuring verdicts are against competent persons, but again, any issue of his medical competency would be addressable on appeal.

## III. Conclusion

For the reasons set forth above, the Court **HOLDS IN ABEYANCE** Petitioner's motion to lift stay and **DENIES** Petitioner's motion for preliminary injunction. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:** **Emmet G. Sullivan**
**United States District Judge**
**September 26, 2019**