UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NASHWAN AL-RAMER ABDULRAZZAQ,

                Plaintiff,

v.                                          Civil Action No. 17-1928(EGS)

DONALD J. TRUMP, *et al.*,

                Defendants.

<u>**MEMORANDUM OPINION**</u>

Petitioner Nashwan Al-Ramer Abdulrazzaq, a male Iraqi
citizen detained at a prison facility in Guantanamo Bay, Cuba
("Guantanamo"), is awaiting trial before a military commission
on non-capital charges of Denying Quarter, Attacking Protected
Property, Using Treachery or Perfidity, Attempted Use of
Treachery or Perfidity, and Conspiracy to Violate the Laws of
War. Mot. to Dismiss Pet'r's Second Am. Pet. for a Writ of
Habeas Corpus ("Mot. to Dismiss"), ECF No. 47 at 17.[1]

On November 29, 2017, Petitioner filed a Second Amended
Petition for a Writ of Habeas Corpus, raising four claims:
(1) the conditions of his confinement at Guantanamo violate the
Eighth Amendment; (2) the structure of the military commissions

---

[1] When citing electronic filings throughout this Opinion, the
Court cites to the ECF page number, not the page number of the
filed document.

process violates the Due Process Clause of the Fifth Amendment ("conflict-of-interest" claim); (3) discrimination against him by reason of his nationality in violation of the equal protection guarantees in the Fifth Amendment ("equal protection" claim); and (4) violation of his right to counsel guaranteed by the Sixth Amendment and the Military Commissions Act ("MCA") ("interference-with-counsel-communications" claim). Pet'r's Opp'n to Resp'ts' Mot. to Dismiss Pet'r's Second Am. Pet. for a Writ of Habeas Corpus, ("Opp'n"), ECF No. 59 at 6-7.

Pending before the Court is the Respondents' motion to dismiss. Respondent argues that Petitioner has failed to state an Eighth Amendment claim, and that the Court lacks jurisdiction to consider the Petitioner's conflict-of-interest, equal protection, and interference-with-counsel-communications claims. In the alternative, Respondent argues that the court should abstain from deciding these three claims at this time. Upon careful consideration of the parties' submissions, the applicable law, and for the reasons discussed below, the Court **GRANTS IN PART** and **HOLDS IN ABEYANCE IN PART** Respondents' Motion to Dismiss. Petitioner's Eighth Amendment claim is **DISMISSED.** Petitioner's remaining claims are **HELD IN ABEYANCE.** Since the Court will abstain from resolving the merits of those claims pending the ultimate conclusion of the military commission

proceedings, all proceedings relating to those claims are
**STAYED**.

**I. Background**

    **A. Petitioner's Medical Condition**

The following facts are alleged in Petitioner's Second
Amended Petition for Writ of Habeas Corpus. Petitioner has been
in the custody of the United States since 2006, first at one or
more "black sites," and then at Guantanamo since April 2007.
Second Am. Pet., ECF No. 164 ¶ 9. Petitioner's medical records
show that "he has sought treatment for chronic and worsening
back pain" throughout his detention. *Id.* ¶ 18. A computerized
tomography scan ("CT scan") taken in 2008 showed "degenerative
disc disease between the L4 and L5 vertebrae." *Id.* At that
point, Petitioner's recurring back pain was deemed chronic. *Id.*
In May 2008, an examination noted that he "seemed unsteady while
standing" and in June 2008, his "back pain had increased to
include pain that radiated down his right leg." *Id.* In August
2008, his doctors noted that he "'expressed concerns about the
current back pain and the length of time' it has taken to
resolve the issue." *Id.* Petitioner "continued to seek treatment
through 2008 and into 2009." *Id.* ¶ 19. In August 2009, he
reported experiencing "flare-ups and pain radiating from his
back to his left leg." *Id.* As a result, medical examiners
"performed various diagnostic tests, but failed to cure the

ailment or the pain." *Id*. "X-rays and CT scans continued to show degenerative disc disease." *Id*. "Throughout 2010, Petitioner continued to be seen for chronic back pain [and] [i]n June 2010, he again reported pain that ran down the side of his leg." *Id*. "Throughout 2010, he received physical therapy, traction table therapy, and regular treatments with a Transcutaneous Electrical Nerve Stimulator unit." *Id*. ¶ 21. However, "[t]hese therapies and treatments were ineffective." *Id*.

In September 2010, Petitioner was diagnosed with spinal stenosis, "an abnormal narrowing of his spinal canal" which can result in pain and "neurological deficits such as numbness and loss of motor control." *Id.* ¶ 22. As a result of this diagnosis, "a doctor proposed the possibility of surgery, though none was performed." *Id*. In November 2011, "Petitioner was again diagnosed with lumbar spine disc herniation and spinal stenosis," reporting "pain radiating to his right buttock." *Id*. ¶ 23. Petitioner continued to experience and be seen for chronic low back pain throughout the remainder of 2011 and 2012. *Id*. ¶¶ 23, 24. In January 2012, he "reported low back pain radiating to his left thigh" and in September 2012, "sharp pain radiating from his back toward his left knee." *Id*. ¶ 24. Doctors ordered testing, "but it is not clear from the medical records whether that testing was performed." *Id*. "In November 2012, [Petitioner] continued to report radiating pain from his low back down

through his thighs, but for the first time, reporting feeling 'pins and needles sensations' in his toes." *Id.* ¶ 25.

Between 2013 and 2017, "Petitioner's condition continued to degrade and he continued to suffer from back pain." *Id.* ¶ 26. On January 9, 2017, Petitioner was subjected to "forcible cell extraction" ("FCE")[2] with "no accommodation . . . made for his long-standing spinal and nerve diseases, well-known to Guantanamo personnel . . . after which his lower back pain symptoms noticeably increased." *Id.* ¶ 27.

On January 23, 2017, another CT scan was performed revealing Petitioner's increased degeneration of the spine. *Id.* ¶ 28. "It was at this time, many years into Petitioner's history of accelerating symptoms, that an MRI was first proposed." *Id.* Independent medical experts informed Petitioner and Respondents that Petitioner's spinal condition, "if left untreated, could cause severe and permanent neurological impairment." *Id.* However, "Guantanamo personnel left this condition untreated for approximately 9 months by which time severe and permanent neurological impairment had either occurred or was imminent." *Id.*

---

[2] Petitioner alleges that the forced cell extraction was a result of Petitioner's resistance to female guards shackling him, which he did because physical contact with females who are not family is contrary to his religious convictions. *Id.* ¶ 27.

In August 2017, Petitioner "began to experience an increase in the loss of sensation in both feet . . . increased loss of sensation in both hands and both legs . . . increase in his muscle weakness . . [and] an increase in the level, sharpness, and frequency of his pain." *Id*. ¶ 29. On August 10, 2017, following a medical examination, "[t]he doctor determined that Petitioner's deteriorating condition required transportation to the hospital for additional tests. Some tests were conducted, but, apparently, a prescribed CT scan could not be performed because the hospital staff failed to properly inject intravenous contrast dye for the exam." *Id.* ¶ 31.

On September 1, 2017, counsel for Petitioner addressed an "Emergency Request for Expert Assistance-Neurological Surgery" memorandum to Respondents. *Id*. ¶ 34. "The memorandum described the inability of Petitioner to obtain urgently needed medical care, the inability of Petitioner or his counsel to obtain current medical records concerning his status or care, and requested the intervention of the Convening Authority to appoint an independent medical specialist able to diagnose Petitioner's condition and recommend treatment." *Id.* ¶ 34. The memorandum was supported by a letter from doctors associated with Physicians for Human Rights who opined that Petitioner needed immediate emergency attention. *Id*. ¶ 35.

On September 5, 2017, a surgical team was flown to Guantanamo in the midst of Hurricane Irma to perform emergency back surgery on Petitioner. *Id*. ¶¶ 36-37.

### B. Military Commission Proceedings

On June 2, 2014, the Convening Authority[3] referred the charges against the Petitioner to a military commission for trial, Mot. to Dismiss, ECF No. 47 at 17, and pretrial proceedings have been ongoing since that time, Resp't Opp'n to Pet'r's Mot. to Lift Stay and for Prelim. Inj., ECF No. 149 at 6. Petitioner's trial is scheduled to begin September 19, 2020. *Id*. at 7. Petitioner has raised his equal protection, conflict-of-interest, and interference-with-counsel-communications claims with the military judge in motions during pretrial proceedings and received adverse rulings on each. Mot. to Dismiss, ECF No. 47 at 8, Reply; ECF No. 62 at 4.

## II. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The court will dismiss a claim if the complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell*

---

[3] The Convening Authority is the Defense Department official who refers a case to trial. *In re Al-Nashiri*, 835 F.3d 110, 112 (D.C. Cir. 2016).

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted).

A complaint survives a Rule 12(b)(6) motion only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint alleging facts which are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

**III. Discussion**

### A. Eighth Amendment Claim

#### 1. Petitioner Fails to State an Eighth Amendment Claim

Petitioner alleges long-standing and deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Opp'n, ECF No. 59 at 6. There is no dispute as to whether this claim is properly before the Court: a person "in

custody may challenge the conditions of his confinement in a petition for habeas corpus . . . " *Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "[T]he government[] [is] obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court therefore has "conclude[d] that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id*. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1962)).

To state a claim for an Eighth Amendment violation, Petitioner must allege that the Guantanamo officials: (1) knew that Petitioner "face[d] a substantial risk of serious harm"; and (2) "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). The risk of "serious inmate harm" must be dire: "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994). With regard to the second prong, "a prison official must have a 'sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "In prison condition cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*.

(citing *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)). The test for "deliberate indifference" is a subjective one:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. This state of mind is more blameworthy than negligence. *Id*. at 835 (citing *Estelle*, 429 U.S. at 104).

It is not the case, however, "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment":

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle,* 429 U.S. at 105-106.

Respondent urges the Court to dismiss Petitioner's claim, arguing that Petitioner is unable to meet the subjective factor–deliberate indifference–because Petitioner concedes that medical personnel did not ignore his complaints; rather "his own allegations show that his spinal condition has not been ignored, but rather has been continually evaluated, monitored, and treated." Mot. to Dismiss, ECF No. 47 at 47. Furthermore, Respondents point out that in view of the three spinal operations he has undergone, Petitioner cannot allege that he has been refused surgical treatment. *Id*. Respondents conclude that Petitioner's claim essentially is "that Guantanamo medical personnel should have recognized the gravity of and acted upon Petitioner's condition sooner." *Id*. at 48. This, they point out, is either an assertion of a professional disagreement or a negligence claim, neither of which satisfies the deliberate indifference standard. *Id*.

Petitioner argues that the question of whether Guantanamo medical officials had the "requisite knowledge of a substantial risk" is a question of fact and therefore inappropriate to be determined on a motion to dismiss. *Id*. (quoting *Farmer*, 511 U.S. at 842). He does not dispute the standard applicable to an Eighth Amendment claim, but citing medical records provided by the Respondent, asserts that "the Petition certainly *alleges* facts demonstrating more than a decade of deliberate

indifference to [Petitioner's] ever more urgent medical needs"
and given that "factual allegations are to be liberally
construed in the Petitioner's favor at this stage in the
proceedings" it would be inappropriate to dismiss his claims at
this time. Opp'n, ECF No. 59 at 38, 40. This argument is
unpersuasive because the Court is "not bound to accept as true a
legal conclusion couched as a factual allegation." *Papasan v.
Allain*, 478 U.S. 265, 286 (1986).

There is no dispute that Respondent knew of Petitioner's
serious medical condition at the beginning of his detention.
Petitioner's medical records, based on a custodial interview in
2006, indicate that he reported that prior to his detention, he
saw a doctor in Tehran, Iran who diagnosed him as having a
herniated disc and constricted vertebrae. ECF No. 59-1 at 1.[4]

---

[4] Although this medical record is attached to Petitioner's
Opposition briefing, the Court finds that it is appropriate to
take note of it. "The Supreme Court has provided scant guidance
on [what procedure is due to detainees challenging their
detention in habeas corpus proceedings], consciously leaving the
contours of the substantive and procedural law of detention open
for lower courts to shape in a common law fashion." *Al-Binahni
v. Obama*, 590 F.3d 866, 870 (D.C. Cir. 2010). "This primacy of
independence over process is at the center of the [Supreme
Court's] *Boumediene* opinion, which eschews prescribing a
detailed procedural regime in favor of issuing a spare but
momentous guarantee that a "judicial officer must have adequate
authority to make a determination in light of the relevant law
and facts." *Id*. at 880. "As such, the Court is not restricted to
follow the standard for addressing motions to dismiss . . . as
required in a civil action outside of the habeas context." *Al-
Kandari v. United States*, Civil Action No. 15-329, ECF No.
Classified Mem. Op. at 11 (D.D.C. Aug. 31, 2015).

Petitioner reported that the doctor in Tehran told him that surgery would not address the issue, but when physical therapy did not help him, the doctor advised him to have surgery. *Id.* It is reasonable, therefore, to infer that failure to provide medical care for this condition would result in "a substantial risk of serious harm" to the Petitioner.

Respondent argues–and the Court agrees–that Petitioner cannot, however, as a matter of law, state a claim for an Eighth Amendment violation because, taking the allegations in the Petition to be true, and making all reasonable inferences from them, plaintiff's allegations do not state a cognizable claim for deliberate indifference on the part of the Guantanamo medical officers. Rather, the allegations show that his condition has been evaluated, monitored, and treated throughout his detention. *See* Second Am. Pet., ECF No. 164 ¶ 18 (CT scan shows degenerative disc disease in 2008 with examinations in May, June, and August); ¶ 19 ("various diagnostic tests" performed); ¶ 21 (2010: "Petitioner continued to be seen for chronic back pain" and "[t]hroughout 2010, he received physical therapy, traction table therapy, and regular treatments with a Transcutaneous Electrical Nerve Stimulator unit"); ¶ 22 (2010: "diagnosed with spinal stenosis"); possibility of surgery proposed); ¶ 23 (2011: "diagnosed with lumbar spine disc herniation and spinal stenosis"); ¶ 24 (late 2011-12 "seen for

chronic low back pain"); ¶ 28 (January 2017: CT scan); ¶ 37
(September 5, 2017: surgery). Respondent's Motion to Dismiss
contains additional facts—specifically that Petitioner underwent
surgery on September 18, 2017 and on November 14, 2017—that
post-date the filing of the Second Amended Complaint and to
which Petitioner does not object. *See* Mot. to Dismiss, ECF No.
147 at 22-23; *see generally* ECF No. 59. In view of the lack of
an objection to the fact of these two surgeries, the Court finds
that it is appropriate to acknowledge them. *See supra* n.6.
Overall, the record indicates that Petitioner has undergone a
total of five surgeries to date during his detention. Pet'r's
Mot. to Lift Stay of Proceedings and for Prelim. Inj., ECF No.
147 at 8.

Petitioner disagrees with the decisions that were made by
Guantanamo medical officers, and the Court does not by any means
discount his allegations of the chronic and debilitating pain he
suffers as a result of this disease. Petitioner's own
allegations, however, demonstrate that his condition has been
evaluated, monitored, and treated throughout his detention. The
reasonable inference to be drawn from Petitioner's allegations
is that he disagrees with the medical decisions that have been
made and/or that those decisions amount to negligence. But as
discussed *infra* Section III.A.2, Petitioner does not dispute
that he is not entitled to a medical provider of his own

14

choosing nor that he is not entitled to medical care of his own choosing. And a claim of negligent medical treatment does not state an Eighth Amendment claim. *Estelle,* 429 U.S. at 105. Accordingly, and in view of the deference due to the judgment of medical personnel in this situation, Petitioner's deliberate indifference claim will be **DISMISSED**.

The Court is concerned about the alleged impact of the forced cell extraction alleged in the Petition, but notes that the parties have, in response to the October 20, 2017 Order of this Court, submitted biweekly joint status reports stating, *inter alia*, whether the Petitioner was subjected to forced cell extractions during the proceeding two week period, and Petitioner has not been subjected to one since the biweekly reporting began. *See generally* Docket for Civil Action No. 17-1928.

### 2. **Petitioner is not Entitled to Prospective Relief on his Eighth Amendment Claim**

Petitioner has failed to state a claim for deliberate indifference, but even if he had, he would not be entitled to the injunctive relief he seeks. Petitioner seeks, among other things, the following forward-looking injunctive relief: (i) "begin immediately to treat Petitioner in accordance with applicable standards of medical care as determined by a court-appointed medical expert;" (ii) "provide the Court and defense

15

counsel with a proposed course of medical treatment of Petitioner;" and (iii) "appoint and fund the reasonable compensation and expenses of qualified medical doctors independent of the United States government in the specialties of orthopedic and/or spinal neurosurgery and pain management, which are applicable to Petitioner's current medical disabilities, and provide them such access as they deem necessary to enable them to promptly conduct such medical examinations, including but not limited to in-person medical examination(s) of Petitioner, and record reviews as they deem appropriate to prepare a report to the Court and the parties on (a) the adequacy of Petitioner's past treatment and (b) their recommendations as to a future course of treatment." Second Am. Pet., ECF No. 164 at 50-51.

"[T]o establish eligibility for an injunction, the inmate must demonstrate the continuance of [the deliberate indifference] during the remainder of the litigation and into the future. In so doing, the inmate may rely, in the district court's discretion, on developments that postdate the pleadings and pretrial motions, as the defendants may rely on such developments to establish that the inmate is not entitled to an injunction." *Farmer,* 511 U.S. at 846 (citations omitted). The Court should exercise caution in issuing any injunction:

> Of course, a district court should approach
> issuance of injunctive orders with the usual
> caution, see *Bell v. Wolfish, supra,* 441 U.S.
> at 562, 99 S. Ct., at 1886 (warning courts
> against becoming "enmeshed in the minutiae of
> prison operations"), and may, for example,
> exercise its discretion if appropriate by
> giving prison officials time to rectify the
> situation before issuing an injunction.

*Id.* at 846-47.

The Petition for Writ of Habeas Corpus was filed on September 21, 2017. Petitioner, in his opposition brief, acknowledges that he has received intensive medical attention since just before the petition was filed and that the intensive medical attention has continued since that time. *See* Opp'n, ECF No. 59 at 40, 43 ("Since early September 2017, following his collapse, Petitioner began to receive intensive medical attention, and that has continued. He has had four significant spinal and other surgeries, and other types of focused medical attention since then."); *see also id.* at 46 ("the fact that prison authorities may have recently begun to act appropriately, after years of deficient medical care, is certainly welcome").

Petitioner disputes that this "emergency-driven medical attention" should provide justification for denying prospective relief, arguing that "[t]he only **reliable** record of the attitudes and intentions of the prison authorities at Guantanamo is the record of their attitudes and actions up to, and immediately after, Petitioner's August [2017] collapse. . . a

17

record of 10-plus years of deliberate indifference." *Id*. at 40-41.

Respondent has attached to its motion to dismiss three declarations of the Senior Medical Officer ("SMO") responsible for Petitioner's care. In the first declaration, dated October 5, 2017, the SMO states that he/she has served in the position since July 14, 2017, and provides some information about his/her qualifications. Decl. of SMO, Camp VII, ECF No. 47-1 ¶¶ 1-2. The Declaration goes on to describe: (1) Petitioner's diagnosis of lumbar spinal stenosis; (2) treatment strategies; (3) the onset of progressive symptoms; (4) treatment of the progressive symptoms; (5) Petitioner's denial of bowel/bladder incontinence and saddle anesthesia; (6) the need for an MRI or CT, "neither of which were available locally at Guantanamo"; (7) the rapid progression of the symptoms in early September 2017 and the resulting need for surgery by appropriate specialists on September 5, 2017; (8) the need for the performance of another surgery on September 18, 2017; (9) Petitioner's post-operative recovery and physical rehabilitative therapy; (10) the need for subsequent surgery; and (11) the arrival of MRI equipment at Guantanamo. *Id*. ¶¶ 4-20.

In the second declaration, dated November 16, 2017, the SMO states that he/she has served in the position since October 30, 2017 and provides some information about his/her credentials.

Decl. of SMO, Camp VII, ECF No. 47-2 ¶ 1. The declaration goes on to describe: (1) a CT scan performed following Petitioner's September 18, 2017 surgery; (2) multi-disciplinary teleconferences conducted "to formulate a comprehensive, safe, and methodical operative plan for the Petitioner'; (3) the arrival of a multi-disciplinary team which performed surgery on Petitioner on November 14, 2017; and (4) Petitioner's post-operative recovery. *Id*. ¶¶ 4-8.

The third declaration, dated December 28, 2017, of the same SMO who submitted the second declaration, provides an update on Petitioner's post-operative recovery. Decl. of SMO, Camp VII, ECF No. 47-3. Declarations of the SMO have been appended to the biweekly status reports that the Court has been monitoring since ordering them to be filed in October 2017.

To be entitled to injunctive relief, Petitioner must allege facts from which it can be reasonably inferred that the deliberate indifference will continue "during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846. As explained *supra* Section III.A.1, Petitioner has acknowledged that he has received intensive medical attention since early 2017. *See* Opp'n, ECF No. 59 at 40, 43, 46. The SMO declarants are physicians responsible for the medical care provided to certain Guantanamo detainees. The declarations are based on personal discussions with the Petitioner and the specialists

treating him. They are detailed and thorough. Furthermore, the fact that Respondent has deployed surgical teams to Guantanamo to treat Petitioner and that he has undergone five surgeries undermines any inference that Respondent may be deliberately indifferent to Petitioner's surgical needs in the future.

Petitioner disagrees with the medical decisions that have been made, but he did not respond to the Respondent's arguments that he does not have a right to choose his own medical provider nor to obtain treatment of his own choosing. *See generally* Opp'n, ECF No. 59. Petitioner has therefore conceded those arguments. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 Fed. App'x 8 (D.C. Cir. 2004).

Even if Petitioner had not conceded those arguments, however, persuasive authority is clear that detainees do not have a constitutional right to choose their own medical providers nor to obtain treatment of their own choosing. *See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care

provided by the prison staff within the institution."); *United States v. Rovetuso*, 768 F.2d 809, 825 (7th Cir. 1985) ("The Eighth Amendment guarantees a prisoner treatment of his serious medical needs, not a doctor of his own choosing."); *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867-68 (2d Cir. 1970) ("The prisoner's right is to medical care—not the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right . . ."); *Rabbani v. Trump*, 05-cv-1607 (RCL), Mem. Op., ECF No. 379 at 19 (noting that Guantanamo detainee is not entitled to the medical treatment of his choice).

The injunctive relief Petitioner seeks, *see supra* at 15-16, is clearly inconsistent with this authority as he seeks to select his own medical provider and direct his own treatment. It is also contrary to Supreme Court authority holding that courts are to defer to the judgment of medical personnel. *See Estelle* at 107 ("But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Finally, the injunctive relief sought is highly intrusive, and therefore inappropriate. *See Rabbani*, ECF No. 379 at 21 (noting that

similarly intrusive relief would "subject[] the medical judgment and authority of [Guantanamo medical officers] to whatever supposedly neutral physician the petitioner's counsel selects"). In view of the appropriate caution to be exercised in issuing an injunction, the Court finds that Petitioner is not entitled to the injunctive relief he seeks. Accordingly, Petitioner's Eighth Amendment claim is **DISMISSED**.

**B. The Court Will Abstain from Exercising Jurisdiction Over Petitioner's Equal Protection, Conflict-of-Interest and Interference-With-Counsel-Communications Claims in Favor of Ongoing Military-Commission Proceedings**

Petitioner also alleges: (1) discrimination against him by reason of his nationality in violation of the equal protection guarantees in the Fifth Amendment ("equal protection" claim); (2) the structure of the military commissions process violates the Due Process Clause of the Fifth Amendment ("conflict-of-interest" claim); and (3) violation of his right to counsel guaranteed by the Sixth Amendment and the MCA ("interference-with-counsel-communications" claim). Opp'n, ECF No. 59 at 6-7. The relief Petitioner seeks is, among other things, that the Court order the military commission charges against him be dismissed and prosecution of him under the current system be enjoined. Second Am. Pet., ECF No. 164 at 52.

**1. The Court Need Not Determine Whether it Has Subject Matter Jurisdiction to Consider Petitioner's Remaining Claims**

Respondent argues that the Court lacks jurisdiction to consider these claims pursuant to 28 U.S.C. § 2241(e)(2) and/or 10 U.S.C. § 950g, or in the alternative, the Court should abstain from considering them pending the conclusion of the military commission proceedings. Because the Court concludes that it should abstain from exercising jurisdiction in favor of the ongoing military commission proceedings, the Court need not determine whether it has subject matter jurisdiction to consider them. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431, (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585, (1999))); *see also In re Al-Nishiri*, 835 F.3d 110, 117 n.1 (D.C. Cir. 2016) ("We need not weigh in on whether the district court had subject matter jurisdiction to adjudicate Al-Nashiri's motion for preliminary injunctive relief. Although the government suggests in its briefing before us that Al-Nashiri's claim does not sound in habeas—a claim that calls into question the district court's statutory jurisdiction, *see* 28 U.S.C. § 2241(e)(2)—we affirm the denial of that motion for reasons we explain below. Because the motion was properly denied on threshold grounds, we need not consider the district court's

subject matter jurisdiction any further.") (citations omitted)).

## 2. Military Commissions Act

"The MCA provides that military commissions have jurisdiction to try 'alien unprivileged enemy belligerent[s],' [10 U.S.C.] § 948c, for 'any offense made punishable' by the MCA, 'whether such offense was committed before, on, or after September 11, 2001,' i*d*. § 948d." *In re Al-Nashiri*, 835 F.3d at 115. "In the MCA, Congress established an 'integrated' scheme dictating how enemy belligerents are to be tried and obtain appellate review . . ." *Id*. at 122. That scheme establishes "procedural protections and rigorous review mechanisms for military commissions." *Id*. at 120. The "significant procedural and evidentiary safeguards include "the right to be represented by counsel, 10 U.S.C. § 949c, be presumed innocent, *id.* § 949*l*, obtain and offer exculpatory evidence, *id.* § 949j, call witnesses on his behalf, *id.* and challenge for cause any of the members of the military commission and the military judge, *id.* § 949f." *Id*. at 123.

The "rigorous review mechanisms" include:

> trial with a military judge presiding and a "jury" that, in capital cases, generally consists of twelve military officers known as "members" of the military commission. 10 U.S.C. §§ 948m, 949m(c). If he is convicted, the convening authority—the Defense Department official who initially referred the case to trial—may review the guilty finding and set it aside, or reduce it to a finding of

> guilty of a lesser-included offense. *Id.* §
> 950b. The convening authority must review a
> sentence to approve, disapprove, commute, or
> suspend it in whole or in part. *Id.* A final
> guilty finding, as modified by the convening
> authority, will then be reviewed by the CMCR
> unless the defendant properly waives this
> right of review. *Id.* §§ 950f, 950c. The CMCR
> is composed of both military and civilian
> judges and has the power to review factual and
> legal questions alike. *Id.* § 950f. The
> defendant may appeal the CMCR's decision to
> our court, and we are empowered to review all
> questions of law, including the sufficiency of
> the evidence. *Id.* § 950g. Finally, our ruling
> can be challenged via petition for writ of
> certiorari in the Supreme Court. *Id.* §
> 950g(e).

*Id.*

### 3. Jurisdictional Abstention

"Federal courts generally 'have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" *In re Al-Nashiri*, 835 F.3d at 118 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). "This duty 'is not, however, absolute'" *Id.* (quoting *Quackenbush,* 517 U.S. at 716). "In the context of criminal prosecutions, federal courts routinely decline to adjudicate petitions that seek collateral relief to prevent a pending prosecution." *Id.* (citations omitted). "[W]here the issue the petitioner challenges can be litigated in pretrial motions and raised as a defense at trial, federal courts typically require the petitioner to navigate that process instead of skirting it." *Id.* (citing *Jarkesy v. SEC*, 803

F.3d 9, 26 (D.C. Cir. 2015). In *Schlesinger v. Councilman*, 420

U.S. 738 (1975), the Supreme Court applied abstention doctrine

to court martial proceedings. *Councilman*, 420 U.S. at 759. And

in *In re Al-Nashiri*, the United States Court of Appeals for the

District of Columbia Circuit ("D.C. Circuit") applied abstention

doctrine to military commissions constituted pursuant to the

MCA. *In re Al-Nashiri*, 835 F.3d at 122, 124. Accordingly, the

parties do not dispute that "the system enacted to adjudicate

[Guantanamo detainees'] guilt . . . adequately protect[s]

[their] rights" and consequently, "judicial review should not

take place before that system has completed its work" subject to

limited exceptions. *In re Al-Nashiri*, 835 F.3d at 122, 124;

Opp'n, ECF No. 58 at 24 ("*In re al-Nashiri* binds this Court, and

so the only remaining issue is whether Petitioner's claims fall

within the scope of the doctrine announced in that case.").[5] What

is at dispute is whether Petitioner's claims fall within one of

the limited exceptions to abstention.

### 4. The "Status Exception" to Abstention

Petitioner argues that his commission-related claims fall

within "two branches" of the "status exception" to abstention.

Opp'n, ECF No. 59 at 28. Judge Friedman recently explained how

---

[5] Petitioner reserves the right to argue that argue that
abstention does not apply to military commission proceedings at
the appropriate time. Opp'n, ECF No. 59 at 24 n.33.

the status exception fits within the "narrow and limited," *In re Al-Nashiri*, 835 F.3d at 128, exceptions to abstention:

> In *In re Al-Nashiri*, the D.C. Circuit described an exception to *Councilman* abstention for a particular kind of extraordinary circumstance: claims arising from "express statutory or constitutional language that gives [petitioner] a right not to be tried" at all. *In re Al-Nashiri*, 835 F.3d at 131. Such rights permit pre-conviction intervention by a habeas court because "the trial itself creates an injury that cannot be remedied on appeal." *Id*. *See* also *Khadr v. United States*, 529 F.3d 1112, 1117-18 (D.C. Cir. 2008) (holding that denial of a preliminary jurisdictional ruling by a military commission is not immediately appealable). Courts have recognized only four types of proceedings that rise to this level: (i) trials that would violate the double jeopardy prohibition, *Abney v. United States*, 431 U.S. 651, 659, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977); (ii) trials for conduct protected by the speech or debate clause, *Helstoski v. Meanor*, 442 U.S. 500, 506-07, 99 S. Ct. 2445, 61 L. Ed. 2d 30 (1979); (iii) trials without a grand jury indictment in violation of the Fifth Amendment, *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802, 109 S. Ct. 1494, 103 L. Ed. 2d 879 (1989); and (iv) the "status exception," where circumstances raise "substantial arguments" as to whether certain individuals may be tried by the military at all. *In re Al-Nashiri*, 835 F.3d at 133. "[T]hat is, where there is a substantial question whether a military tribunal has personal jurisdiction." *Id*. *See* also *Schlesinger v. Councilman*, 420 U.S. [738,] 758-59, 95 S.Ct. 1300.

*Al-Baluchi v. Esper*, Civil Action No. 08-2083, 2019 WL 3414334, at * 5 (D.D.C. July 29, 2019)

### a. Equal Protection Claim

Petitioner argues that his equal protection claim falls under one type of status exception to abstention. *See* Opp'n, ECF No. 59 at 29. The D.C. Circuit has observed that "[t]he precise contours of this 'status' exception are unclear, but the Supreme Court has offered two examples of challenges that may come within its scope." *In re Al-Nashiri*, 835 F.3d at 133. The first example is "where the military attempts to court-marshal a defendant who is undisputedly a civilian." *Id*. (quotation marks omitted). "In these cases, the 'issue presented concerned not only the military court's jurisdiction, but also whether under Art. I Congress could allow the military to interfere with the liberty of civilians even for the limited purpose of forcing them to answer to the military justice system.' *Councilman*, 420 U.S. at 759. Requiring civilian defendants to first proceed through the military system would be 'especially unfair' because of the 'disruption caused to [their] civilian lives' and the accompanying 'deprivation of liberty.' *Id*. (quoting *Noyd*, 395 U.S. [683] 696 n.8 [(1969)], 89 S. Ct. 1876 [1884] [(1969)])." *In re Al-Nashiri*, 835 F.3d at 133. Accordingly, abstention "is not appropriate in cases in which individuals raise substantial arguments denying the right of the military to try them at all, and in which the legal challenge turns on the status of the persons as to whom the military asserted its power." *Hamdan v.*

*Rumsfeld*, 548 U.S. 548, 585, n.16 (quotation marks and citations omitted). "In other words, . . . when there is a substantial question whether a military tribunal has personal jurisdiction over the defendant," abstention is inappropriate. *Id.*

Petitioner argues that his equal protection claim falls within this exception because he raises a substantial question as to whether the military commission created by the MCA has personal jurisdiction over him: "If, as Petitioner contends, the jurisdictional limitation to non-citizens violates the Constitution on its face, then § 948c is void *ab initio* and no one, including Petitioner, may lawfully be tried by the MCA military commission." Opp'n, ECF No. 59 at 29. Petitioner argues that although the Fifth Amendment does not contain an explicit right not to be tried, he falls within this exception because "as a matter of logic, being forced to trial in a tribunal that is devoid of jurisdiction over a person because of a fundamental constitutional flaw rises to the same level as being forced to trial despite a right not to be tried." Opp'n, ECF No. 59 at 29. Petitioner argues that his claim is "substantial" because "Congress has established a separate and decidedly unequal system of criminal justice that denies fundamental and statutory rights to non-citizens that it affords to its citizens." *Id*. at 30.

The status exception within which Petitioner argues he fits falls within "an exception to *Councilman* abstention for a particular kind of extraordinary circumstance: claims arising from 'express statutory or constitutional language that gives [petitioner] a right not to be tried' at all." *Al-Baluchi*, 2019 WL 3414334, at * 5 (quoting *In re Al-Nashiri*, 835 F.3d at 131). Respondent argues—and the Court agrees—that because the system created by the MCA has been determined by the D.C. Circuit to adequately protect the rights of Guantanamo detainees, an exception to abstention must be based on a right not to be tried at all, otherwise the admonition that the "cost, anxiety and inconvenience" of needing to defend a prosecution is insufficient to justify abstaining, would be meaningless. *See Councilman*, 420 U.S. at 755.

Petitioner's argument—that his equal protection claim raises a substantial question as to whether the military commission has personal jurisdiction over him "rises to the same level" as a constitutional right not to be tried—is unpersuasive. Petitioner has acknowledged that the Fifth Amendment does not contain an explicit right not to be tried. He therefore reframes his equal protection claim as one of personal jurisdiction to fit within this example of the status exception to abstention. But he has provided no legal support for this novel theory. *See generally* Opp'n, ECF No. 59 at 28-32.

Furthermore, Petitioner's argument that his claim is "substantial" is inconsistent with D.C. Circuit precedent for two reasons. First, when the D.C. Circuit held that "the system enacted to adjudicate [Guantanamo detainees'] guilt . . . adequately protect[s] [their] rights," *In re Al-Nashiri*, 835 F.3d at 122, it was well aware that "[t]he MCA provides that military commissions have jurisdiction to try 'alien unprivileged enemy belligerent[s],'" *id.* at 115 (citing 10 U.S.C. § 948c). Second, Petitioner's equal protection claim has been rejected by the D.C. Circuit. *Al Bahlul v. U.S.* 840 F.3d 757, 758 (D.C. Cir. 2016) (en banc) (per curiam) ("Bahlul has also raised First Amendment and Equal Protection challenges to his conviction. The Court rejects those challenges.").[6] Petitioner attempts to distinguish his claim from those in *Al-Nashiri*, because he "unlike al-Nashiri . . . *does* assert that the military commissions are unconstitutional." Opp'n, ECF No. 59 at 24-25 (internal quotations omitted). Since the D.C.

---

[6] Petitioner argues that the merits of his equal protection claim remain open in this Circuit because the claim was rejected without an opinion and two of the six judge majority voted under a plain error standard. Opp'n, ECF No. 59 at 31 n.38. Respondents disagree, arguing that this claim "has been rejected by the only appellant panels to consider it on the merits," noting that Petitioner stated "that any attempt to present this claim within the integrated military-commission trial and appellate system would be futile." Reply, ECF No. 62 at 16 n.8 (citing Second Am. Pet.). The Court notes that Petitioner subsequently raised this claim before the military judge. *Id*. at at 8 n.2

Circuit has rejected this same equal protection claim, however, it is clear that Petitioner has not raised a substantial question of jurisdiction.

Petitioner does not explain how raising this claim at this time justifies this Court's intervention in the ongoing military-commission proceedings. Petitioner raised this same claim before the military judge. Reply, ECF No. 62 at 8 n.2. To the extent Petitioner disagrees with the military judge's ruling on this claim, he can seek appellate review within the system created by the MCA, which includes review by an Article III Court and potentially the Supreme Court. *See In re Al-Nashiri*, 835 F.3d at 122. Petitioner does not claim that he will be unable to seek appellate review of the military judge's decisions with which he disagrees. *See generally* Opp'n, ECF No. 59. And his disagreement with that decision does not justify this Court's intervention. *In re Al-Nashiri*, 835 F.3d at 123 ("Al-Nashiri asks us to do what the Supreme Court notably did *not* do in *Councilman*: determine whether pretrial intervention is warranted by examining the on-the-ground performance of the system that Congress and the Executive have established." (citation omitted)).

For all of these reasons, Petitioner's equal protection claim does not fall within the status exception to abstention, and the Court will abstain from exercising jurisdiction to

decide this pre-trial challenge in favor of ongoing military-commission proceedings.

### b. Conflict-of-Interest and Interference-With-Counsel-Communication Claims

Petitioner argues that his conflict-of-interest and interference-with-counsel-communications claims fall under the second example of a status exception to abstention. Opp'n, ECF No. 59 at 32. This example occurs when there is an allegation that a "military commission was not 'regularly constituted' under the Geneva Conventions. An irregularly constituted court is 'ultra vires' and therefore necessarily lacks personal jurisdiction over any defendant, the Court reasoned." *In re Al-Nashiri*, 835 F.3d at 134 (quoting *Hamdan*, 548 U.S. at 589 n.20). Petitioner claims that the commission proceedings are ultra vires because he is being denied: (1) the right to go to trial before an unbiased judicial official; and (2) the effective assistance of counsel in violation of the Sixth Amendment. Opp'n, ECF No. 59 at 33.

Petitioner's conflict-of-interest claim is that the Convening Authority's powers and responsibilities are both prosecutorial and judicial. *Id*. at 32-33. Specifically:

> the Convening Authority is the single most powerful official presiding over an accused's military commission proceeding, responsible for most of the critical actions affecting an accused's rights over the course of the criminal proceeding, from discretionary

> authority over what charges are brought to
> trial and whether they are capital, to hand-
> selecting the venire, retaining the power to
> amend or overturn any sentence, and many
> others in between, including negotiating plea
> bargains and resourcing the defense.

*Id.* at 32. Petitioner's interference-with-counsel-communications claim alleges that "as a direct result of Government actions (the most recent of which remain classified) Petitioner's ability to communicate with his commission counsel on a confidential basis has been materially impaired to the point that he has been constructively denied the assistance of counsel, in violation of the Sixth Amendment and MCA." *Id.* at 33. Petitioner contends that the alleged conflict of interest and interference with counsel communications makes the commission proceedings "so procedurally deficient that they are wholly ultra vires." *Id.* at 32 (citing *In re Al-Nashiri*, 835 F.3d at 134). As a result, Petitioner claims, he "has been and will continue to be denied a full and fair opportunity to litigate his defenses before the military commission." *Id.* at 33 (citing Second Am. Pet., ECF No. 164 ¶¶ 83-84). Petitioner argues that these defects are "structural" because they "affect[] the framework within which the trial proceeds, rather than simply an error in the trial itself," *id.*, and accordingly they fall within the ultra vires exception, *id.* at 34. Petitioner also contends that the ultra vires exception applies

because "the Executive Branch exceeded the authority granted to it by Congress in formulating procedures for military commissions" when it gave the Convening Authority a prosecutorial role, which results in the commission being an irregularly constituted court. *Id*. at 36 (citing *Hamdan*, 548 U.S. at 589 n.20).

The D.C. Circuit, when it determined that "the system enacted to adjudicate [Petitioner's] guilt will adequately protect his rights," was well aware of the Convening Authority's powers and responsibilities. *See In re Al-Nashiri*, 835 F.3d at 122. Accordingly, Petitioner's argument—that the alleged conflict of interest renders the entire scheme so procedurally deficient as to be ultra vires—is untenable. The scheme provides for review by the CMCR and the D.C. Circuit, and Petitioner has not identified a structural flaw that will prevent him from presenting his claims to those appellate bodies. *See generally* Opp'n, ECF No. 59; *see also In re Al-Nashiri*, 835 F.3d at 125 (Petitioner "does not argue before us that any evidentiary or procedural defects will prevent the military commission and various appellate bodies from fully adjudicating his defense"). Nor has he identified a structural flaw with the CMCR or D.C. Circuit. *See generally* Opp'n, ECF No. 59. The Court is unpersuaded by Petitioner's argument that the alleged conflict of interest results in the commission being an irregularly

constituted Court because at most, Petitioner has alleged an isolated flaw in the undisputedly congressionally-authorized scheme. This hardly renders the commission "irregularly constituted" in light of the D.C. Circuit's *In re Al-Nashiri* decision. Finally, Petitioner does not argue that the MCA contains a provision that impairs his ability to communicate with counsel. *See generally id.*

Petitioner has raised these two claims before the military judge and received adverse decisions. Mot. to Dismiss, ECF No. 47 at 30; Reply, ECF No. 62 at 4. To the extent he disagrees with the military judge's rulings, he can seek appellate review within the system created by the MCA, which again includes review by an Article III Court and potentially the Supreme Court.

For all of these reasons, Petitioner's conflict-of-interest and interference-with-counsel-communications claims do not fall within the status exception to abstention, and the Court will therefore abstain from exercising jurisdiction to decide these pre-trial challenges in favor of ongoing military-commission proceedings.

In the alternative, Petitioner briefly argues that his interference-with-counsel-communications claim is properly characterized as a challenge to a condition of confinement: "While the interference with Petitioner's attorney-client

relationship alleged in Claim for Relief IV differs in important respects from that addressed in *Hatim*, it shares the key characteristic of being based on a prison-wide policy that does not pertain specifically to military commission accused. It thus constitutes a 'condition of confinement' regardless of whether it is also deemed appropriate for habeas jurisdiction on any other ground." Opp'n, ECF No. 59 at 23-24.

Petitioner relies on *Hatim v. Obama*, 760 F.3d 54 (D.C. Cir. 2014) to support his assertion that this is a conditions of confinement claim. In *Hatim*, Guantanamo detainees challenged two policies-one concerning where detainees could meet with their habeas lawyers and the other concerning the physical search detainees must undergo before and after meeting with their habeas lawyers-as "having the purpose and effect of discouraging meeting with their [habeas] counsel." *Hatim*, 760 F.3d at 356, 357. There was no dispute that the challenges to the two policies were challenges to conditions of confinement and therefore properly raised in a habeas petition. *Id*. at 358.

Here, Petitioner argues that there is a prison-wide policy that results in interference with the attorney-client relationship. As an initial matter, regardless of whether this claim implicates any Sixth Amendment rights Petitioner may or may not have, *see* Reply, ECF No. 62 at 20, the MCA itself provides for his right to be represented by counsel. *See* 10

U.S.C. § 949c. The Court is not persuaded that this is properly construed as a conditions of confinement claim. Unlike his Eighth Amendment claim, Petitioner does not allege that this is a conditions of confinement claim, *see generally* Second Am. Pet., ECF No. 164, and Petitioner has not sought leave to amend his Second Amended Petition, *see generally* Docket for Civil Action No. 17-1928. And the alleged interference with counsel communications does not "make his imprisonment more burdensome than the law allows or curtail[] his liberty to a greater extent than the law permits." *Aamer*, 742 F.3d at 1036 (quoting *Miller v. Overholser,* 206 F.2d 415, 420 (D.C. Cir. 1953).

Furthermore, this claim pertains to the conduct of and fairness of his military-commission defense; not this habeas proceeding. *See* Second Am. Pet., ECF No. 164 at 2 (alleging "interference with Petitioner's constitutional and statutory right to counsel in his military commission case"); *Id.* at 8 ("Petitioner requests that the Court enjoin further proceedings in Petitioner's military commission case until his military commission defense counsel are permitted to advise him of the information contained at Exhibit NN, Attach. J, which is necessary for counsel to obtain his informed consent to carry on privileged discussions under the present circumstances.); *Id.* at 37 ("Petitioner is being denied his constitutional and statutory right to counsel in his military commission case."). Petitioner

raised the same claim before the military judge, who denied the motion on the following grounds: "Taking the recitation of facts provided by the defense in various pleadings . . . at face value, the commission finds there is no evidence or even an allegation of any intrusion into the attorney-client relationship in this case. The commission further finds the defense is not operating under an ethical constraint in meeting with their client." Reply, ECF No. 62-1 at 3.

To the extent Petitioner disagrees with the military judge's ruling on this claim, he can seek appellate review within the system created by the MCA, which again includes review by an Article III Court and potentially the Supreme Court. Petitioner does not claim that he will be unable to seek appellate review of this decision. *See generally* Opp'n, ECF No. 59. And because this Court has determined to abstain from exercising jurisdiction to decide this pre-trial challenge in favor of ongoing military-commission proceedings, the Court can consider the claim following the ultimate conclusion of those proceedings.

## III. Conclusion

For the reasons set forth above, Respondent's motion to dismiss is **GRANTED IN PART** and **HELD IN ABEYANCE IN PART.** Petitioner's Eighth Amendment claim is **DISMISSED.** Petitioner's remaining claims are **HELD IN ABEYANCE.** Since the Court will

abstain from resolving the merits of those claims pending the ultimate conclusion of the military commission proceedings, all proceedings relating to those claims will be **STAYED**. An appropriate Order accompanies this Memorandum Opinion.

      **SO ORDERED.**

**Signed:**      **Emmet G. Sullivan**
                 **United States District Judge**
                 **October 28, 2019**